J-A26011-21

2022 PA Super 23

| | | |
|---|---|---|
| IN THE INTEREST OF: A.J.R.O., A MINOR | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.C.O., MOTHER | : : : : : : : | |
| | : | No. 1238 EDA 2021 |

Appeal from the Decree Entered May 24, 2021
In the Court of Common Pleas of Delaware County Orphans' Court at
No(s):  0033-2020-A,
CP-23-DP-0000163-2015

BEFORE:  BOWES, J., STABILE, J., and McCAFFERY, J.

OPINION BY BOWES, J.:                                         **FILED FEBRUARY 8, 2022**

D.C.O. ("Mother") appeals from the decree entered on May 24, 2021,[1] which terminated her parental rights involuntarily to her son, A.J.R.O., born in September 2014.[2]  In addition, Mother appeals from the decree dated April 28, 2021, changing A.J.R.O.'s permanent placement goal from return to parent or guardian to adoption.  We vacate the termination decree and remand for proceedings consistent with this opinion.

The record reveals this family has a lengthy history of involvement with Children and Youth Services of Delaware County ("CYS") dating back to the time of A.J.R.O.'s birth when he tested positive for methadone, opiates, and

_____

[1]  The decree was dated May 19, 2021, but was not filed until May 24, 2021.

[2]  The orphans' court entered a separate decree terminating the parental rights of A.O. ("Father"), who did not file an appeal.

benzodiazepines. N.T., 3/24/21, at 95;[3] CYS Exhibit 1 (Court Summary).[4] CYS later received a report of a domestic violence incident between Mother and Father in July 2015 during which A.J.R.O. was injured. CYS Exhibit 1. A.J.R.O. was adjudicated dependent in August 2015, and court supervision ended in February 2016. N.T., 3/24/21, at 95; CYS Exhibit 1. CYS thereafter provided in-home services to monitor substance abuse concerns and the family's living situation. N.T., 3/24/21, at 96.

CYS received the referral resulting in A.J.R.O.'s current adjudication on March 12, 2019. *Id*. at 94. The referral indicated that when Mother and Father brought A.J.R.O. to the home of paternal aunt, his current foster mother, she suspected the parents were engaging in substance abuse and failing to attend to A.J.R.O.'s needs. *Id*. Thus, A.J.R.O. was adjudicated dependent for the second time on April 30, 2019. *Id*. at 23, 96; CYS Exhibit 1. A.J.R.O. has remained in that same foster home continuously since then. N.T., 3/24/21, at 98.

---

[3] The title page of the transcript for this proceeding incorrectly states the date as April 7, 2021. The hearing was held on March 24, 2021, and we utilize that date in our citations to the transcript of that proceeding.

[4] Neither CYS's petition to terminate Mother's parental rights, nor the exhibits admitted into evidence in this matter, appear in the certified record. Mother, however, included those documents in her reproduced record. As no party disputes the authenticity of the documents in the reproduced record, we have considered them. *See Commonwealth v. Holston*, 211 A.3d 1264, 1276 (Pa.Super. 2019) (*en banc*) (citing *Commonwealth v. Brown*, 52 A.3d 1139, 1145 n.4 (Pa. 2012)).

On September 23, 2020, CYS filed a petition to terminate involuntarily Mother's parental rights to A.J.R.O. on the adoption docket, No. 0033-2020-A. Although not clear from the record before us, CYS also filed a petition to change A.J.R.O.'s permanent placement goal from reunification to adoption at the dependency docket, No. CP-23-DP-0000163-2015.[5] The orphans' court held consolidated termination and goal change hearings on March 24, 2021, and April 28, 2021.[6] Following the hearings, the court issued (1) a decree terminating Mother's parental rights, which it entered on the adoption docket on May 24, 2021; and (2) an order dated April 28, 2021, changing A.J.R.O.'s goal to adoption on the dependency docket.[7]

On June 17, 2021, Mother filed a single notice of appeal from both the termination decree and goal change order. Although her notice of appeal listed both the adoption and dependency docket numbers, it was only filed at the adoption docket. In her accompanying concise statement of errors

---

[5] Since Mother only filed a notice of appeal at the adoption docket, as discussed *infra*, we did not receive the dependency record and cannot confirm whether CYS filed a petition.

[6] The court appointed Roger R. Ullman, Esquire, as the guardian *ad litem* ("GAL") during the dependency proceedings to represent A.J.R.O. Ostensibly, he also acted as legal counsel during the termination proceedings. We note with disapproval that Attorney Ullman did not file a brief in this appeal advocating for A.J.R.O.'s legal interests. Instead, Attorney Ullman submitted a letter joining the orphans' court's opinion. The letter does not reference A.J.R.O.'s preferred outcome.

[7] This order does not appear in the certified record, but Mother attached a copy of it to the docketing statement she filed in this Court.

complained of on appeal, Mother raised several issues challenging both the termination decree and goal change order.

In accordance with this Court's prior practice, we issued a *per curiam* order directing Mother to show cause why this appeal should not be quashed for failure to comply with the Official Note to Pa.R.A.P. 341(a) and **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018).[8] Specifically, in **Walker**, the Pennsylvania Supreme Court mandated "that when a single order resolves issues arising on more than one lower court docket, separate notices of appeal must be filed[ and t]he failure to do so will result in quashal of the appeal." **Walker**, **supra** at 977. Mother responded, asking this Court to strike the goal change portion of her appeal. Alternatively, she argued quashal was unnecessary pursuant to **Always Busy Consulting**, **LLC v. Babford & Company**, **Inc.**, 247 A.3d 1033 (Pa. 2021), because the termination and goal change dockets were "consolidated." Answer to Order to Show Cause, 7/22/21, at 2-3. Finally, she explained that her counsel relied on the 2019 Pennsylvania Dependency Benchbook when preparing this appeal, which did not mention **Walker** or the need to file multiple notices of appeal.

By order of August 4, 2021, this Court discharged the rule to show cause, but advised that the issue could be revisited by the merits panel, and that counsel should be prepared to address the panel's concerns either in their

---

[8] This Court has applied the holding from **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), to children's fast track appeals. **See In the Interest of S.D.**, 257 A.3d 746 (Pa.Super. 2021) (citing **In the Matter of M.P.**, 204 A.3d 976, 981 (Pa.Super. 2019)).

- 4 -

briefs or at oral argument. Order, 8/4/21. CYS raises the issue in its brief and urges this Court to quash the appeal pursuant to **Walker**.

The orphans' court complied with Pa.R.A.P. 1925(a), and the matter is ripe for our review. Mother presents the following issues:

1) [Whether] the trial court err[ed] in determining that the agency provided, by clear and convincing evidence, the requirements of 23 Pa.C.S. 2511 (a)(1)(2)(5)(8) for the involuntary termination of the birth mother's parental rights, in that:

   a. The trial court erred as a matter of law in not applying the time suspension as required by the Emergency Orders issued by the Hon. Kevin F. Kelly, President Judge of Delaware County, issued on 16 March 2020, 23 March 2020, 13 April 2020, 28 April 2020, and 5 May 2020.

   b. The trial court erred in ignoring the executive orders of Governor Wolf to "Stay at Home" from 23 March 2020 to 4 June 2020.

   c. The trial court erred in ignoring the Emergency Orders issued by the Hon. Kevin F. Kelly, President Judge of Delaware County, that suspended in person visitation between parents and children in placement from 23 March 2020 to 17 July 2020 and the de facto suspension of in person visitation between parents and children in placement from 23 March 2020 to May 2021.

2) Did the trial court abuse its discretion in finding that [Mother] abandoned her child when the foster parent threaten[ed] to call the cops if [Mother] returned to pick up the minor, [A.J.R.O.], in February 2019[?]

3) Did the trial court err concerning [Mother's] difficult pregnancy during the summer and fall of 2020, during the COVID-19 pandemic[?]

4) Did the trial court abuse its discretion when applying equitable princi[ples] to the termination of parental rights concerning the effect and reverberations of the COVID-19 pandemic upon society, the court, parents, supervised visitation providers, and [CYS?]

5) Did [t]he trial court abuse its discretion in finding that the termination of parental rights would best serve the needs and welfare of [A.J.R.O.] when there is a strong and loving bond between [Mother] and [A.J.R.O.], and severance of that bond will cause irreparable harm to [A.J.R.O.?]

6) Did the trial court abuse its discretion by failing to properly consider and sustain [Mother's] counsel's objections and directing the hearings progress, including, *inter alia*, the operational capability of the Courts during the COVID-19 pandemic and the operational capability of [CYS] during the COVID-19 pandemic[?]

Mother's brief at 4-5 (unnecessary capitalization omitted). Notably, Mother abandoned her challenges to the goal change order in her brief.

Before we address the merits of Mother's issues on appeal, we must first determine whether she has complied with the mandates of the Note to Rule 341 and **Walker**. CYS maintains that Mother filed a single notice of appeal from two separate orders, when she should have filed two separate notices of appeal. Thus, CYS argues, Mother's appeal should be stricken.

Mother does not address the Note to Rule 341 or **Walker** in her brief. Nonetheless, we consider Mother's request in her response to our rule to show cause for this Court to strike the offending goal change portion of her appeal,

- 6 -

as the underlying order was that from which she failed to file a separate notice of appeal.[9]

_____

[9] We find Mother's alternative arguments unpersuasive. First, Mother argued that the dockets were consolidated below. In *Always Busy Consulting*, *LLC v. Babford & Company*, *Inc.*, 247 A.3d 1033, 1043 (Pa. 2021), our Supreme Court held that "filing a single notice of appeal from a single order entered at the lead docket number for consolidated civil matters where all record information necessary to adjudication of the appeal exists, and which involves identical parties, claims and issues, does not run afoul" of the Note to Rule 341 or *Walker*. Here, while the orphans' court conducted consolidated hearings on both dockets, the dockets always remained separate for filing purposes. This distinction is abundantly clear given that Mother's filing of her notice of appeal at only the adoption docket resulted in this Court not receiving the dependency record. Moreover, the adoption record does not include any of the filings at the dependency docket, including the goal change order that Mother attempted to appeal. Thus, the adoption record does not contain "all record information necessary to adjudication of the appeal" and Mother cannot rely on consolidation to avoid quashal. *Id*.; *see also Commonwealth v. Young*, ___ A.3d ___, 2021 WL 6062566, at *9 (Pa. filed December 22, 2021) (distinguishing *Always Busy* where, "regardless of whether there is identity of parties and claims, the docket numbers were not different 'sides of the same coin' — that is, different ways of litigating the exact same dispute. . . — and there was no lead docket number").

Second, Mother argued that any error was excusable because her counsel relied on the inadequate guidance of the Dependency Benchbook. We are aware of no legal authority that supports Mother's proposal, and the only authority that Mother mentions, *In re K.T.E.L.*, 983 A.2d 745 (Pa.Super. 2009), is inapt. In *K.T.E.L.*, we granted leniency where an appellant in a children's fast track appeal failed to file a concise statement of errors complained of on appeal contemporaneously with a notice of appeal. We did not address failure to comply with the Note to Rule 341. This Court "may overlook the requirements of *Walker* where a breakdown occurs in the court system, and a defendant is misinformed or misled regarding his appellate rights." *In the Interest of S.D.*, 257 A.3d 746, 749 (Pa.Super. 2021) (cleaned up). However, there is no evidence in the certified record that the court misadvised Mother or her counsel regarding the correct appellate procedure. *Id*. at 751 ("[T]he silence of the trial court with respect to giving guidance to the parents as to the procedure for filing appeals does not

*(Footnote Continued Next Page)*

As noted *supra*, Mother filed a single notice of appeal from two separate orders: a decree terminating her parental rights on the adoption docket and an order changing A.J.R.O.'s permanency goal on the dependency docket. Mother filed this notice of appeal solely at the adoption docket but purported to appeal from both dispositions, as evidenced by her inclusion of both dockets on the notice and challenging both orders in her concise statement.

This Court has since extended "**Walker** to require quashal when an appellant files a single notice of appeal from both the dependency docket and adoption docket as separate notices of appeal are required for discrete challenges to the permanency goal change order and termination order." ***In the Interest of S.D.***, 257 A.3d 746, 749 (Pa.Super. 2021) (citing ***In the Matter of M.P.***, 204 A.3d 976, 981 (Pa.Super. 2019)). In **S.D.**, the father and mother appealed from the orders terminating their parental rights involuntarily from their children, as well as the separate order changing the children's permanency goal. Specifically, the parents jointly filed separate notices of appeal for each termination order, but therein listed both the

---

constitute a breakdown in the court processes. As such, we cannot excuse [the parents'] non-compliance with Rule 341 and **Walker** due to a breakdown in court processes."); ***see also In the Interest of K.M.W.***, 238 A.3d 465, 470 n.2 (Pa.Super. 2020) (*en banc*) (declining to quash based on a breakdown in the court system but urging our Supreme Court to consider creating a special exception for children's fast track cases where "the technical violation does not prejudice parties, and does not hamper our ability to review the appeal"). Moreover, inadequate research on the part of counsel does not constitute a breakdown in the court system. Whether it constitutes ineffective assistance that would excuse quashal is a different question, and one that, given our disposition, is not before this Court.

adoption and dependency dockets. Although the circumstances in **S.D.** were not identical to those in **Walker**, this Court held that pursuant to Rule 341, "to the extent that [the parents] wished to challenge both the termination orders on the adoption docket and the goal change orders on the dependency dockets, they were required to file a notice of appeal from each order for each child." **S.D.**, **supra** at 750. In response to this Court's rule-to-show-cause order, the parents argued that they only intended to challenge the termination order and the dependency docket was erroneously included. However, this Court found this claim belied by the record, as the parents raised arguments challenging the goal change order in both their concise statement and appellate brief. Therefore, we quashed the appeals.

However, we are not bound by the holding in **S.D.**, as our Supreme Court has since found that "there is another rule with a role to play in matters like this one: Pa.R.A.P. 902 (manner of taking appeal)." **Commonwealth v. Young**, ___ A.3d ___, 2021 WL 6062566, at *9 (Pa. filed December 22, 2021). Rule 902 provides in pertinent part:

> Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but it is subject to such action as the appellate court deems appropriate, which may include, but is not limited to, remand of the matter to the lower court so that the omitted procedural step may be taken.

Pa.R.A.P. 902. Rule 902 was revised in 1986, with the following Note:

> The reference to dismissal of the appeal has been deleted in favor of a preference toward[ ] remanding the matter to the lower court so that the omitted procedural step may be taken, thereby

enabling the appellate court to reach the merits of the appeal. Nevertheless, dismissal of the appeal ultimately remains a possibility where counsel fails to take the necessary steps to correct the defect.

***Id***., Note.

In ***Young***, the Commonwealth submitted one notice of appeal for each co-defendant, listing the three docket numbers associated with that defendant on the notice of appeal. In response to this Court's rule-to-show-cause order, the Commonwealth argued that it should be permitted the opportunity to amend the notices of appeal because the error was only a formatting error, which did not result in prejudice to the defendants or a failure to provide notice. Although the Commonwealth did not specifically cite Rule 902, our Supreme Court concluded that the Commonwealth had preserved a claim based on Rule 902 because "its request for leave to correct any formatting error in its notices of appeal plainly invoked the remedial, ameliorative and equitable relief measures prescribed in Rule 902." ***Young***, ***supra*** at *10 n.18.

In considering the interplay between Rules 341 and 902, our Supreme Court held as follows:

> Rule 341 requires that when a single order resolves issues arising on more than one docket, separate notices of appeal must be filed from that order at each docket; but, where a timely appeal is erroneously filed at only one docket, Rule 902 permits the appellate court, in its discretion, to allow correction of the error, where appropriate. Accordingly, as there were two timely-filed notices of appeal in this case, one for each defendant, that listed additional docket numbers for each defendant, we reverse the Superior Court's order quashing the appeals and, pursuant to Rule 902, we remand to that court to reconsider the Commonwealth's request to remediate its error, "so that the omitted procedural step may be taken." Pa.R.A.P. 902.

- 10 -

***Young***, ***supra*** at *11 (cleaned up). Accordingly, our Supreme Court remanded to this Court "to determine, in [our] discretion, whether the Commonwealth should be granted relief through application of the safe harbor provision of Pa.R.A.P. 902[.]" ***Id***. at *1.

Mother's request for this Court to strike the non-compliant portion of her appeal invokes the equitable measures prescribed in Rule 902, and we thus consider this argument preserved. Instantly, the orphans' court entered two orders resolving issues arising on two separate dockets, and Mother filed a single notice of appeal from both orders solely on the adoption docket. Although the facts of this case are not identical to those in ***Young***, we find persuasive the ***Young*** Court's rationale for considering Rule 341(a) in conjunction with Rule 902. Specifically, our Supreme Court

> [a]gree[d] with the Commonwealth that there would have been no prejudice to the defendants had the Superior Court granted its prompt and clear request for remand to correct the procedural defect once it was identified. Further, the Commonwealth convincingly argues that nothing practical is achieved by the reflexive quashal of appeals for easily corrected, non-jurisdictional defects. Indeed, Rule 902 is designed specifically to eliminate such quashals as it "eliminates the 'trap' of failure to perfect an appeal" by making timely notices of appeal "self-perfecting." Pa.R.A.P. 902, Note.
>
> We realize permitting parties to rectify non-jurisdictional procedural missteps relating to notices of appeal will, for all practical purposes, largely blunt the bright-line rule the ***Walker*** Court sought to impose with respect to Rule 341(a). However, as we also expressly noted in ***Walker***, "[p]rocedural rules should be construed to give effect to all their provisions, and a single rule should not be read in a vacuum, especially where there is a relationship between different rules." ***Walker***, 185 A.3d at 976 (citations omitted).

- 11 -

*Young*, *supra* at *11 (cleaned up).

Based on the foregoing, although it is evident that Mother intended to appeal both the termination decree and goal change order based upon her concise statement, we will permit Mother to correct her defective notice of appeal, which was only filed at the adoption docket, by allowing her to abandon her dependency docket claims and proceeding solely on her adoption docket claims. Accordingly, we do not quash Mother's appeal.

Nonetheless, we do not yet reach the merits of Mother's appeal as we must first address *sua sponte* the representation provided by A.J.R.O.'s GAL. Consistent with our Supreme Court's holding in *In re Adoption of K.M.G.*, 240 A.3d 1218 (Pa. 2020), we verify that the trial court appointed Attorney Ullman, as noted *supra*, as the GAL during the dependency proceedings, to represent A.J.R.O. in the termination proceedings pursuant to 23 Pa.C.S. § 2313(a).[10] *See id*. (reiterating that, absent a conflict between

---

[10] This subsection provides as follows:

> **(a) Child.--**The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a [GAL] to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S. § 2313(a).

legal interest and best interests, one attorney may serve the dual role of GAL and § 2313 counsel).

"[W]here the orphans' court has appointed a single attorney to serve as [GAL] and legal counsel to represent both the child's best interests and legal interests, [our Supreme Court] concluded an appellate court should review *sua sponte* whether the court made a determination that those interests did not conflict." ***In re P.G.F***, 247 A.3d 955, 964–65 (Pa. 2021). The Court "cautioned that 'appellate review of this question does not involve second-guessing whether GAL/Counsel in fact had a conflict but solely whether the orphans' court made the determination in the first instance.'" ***Id***. at 965 (quoting ***K.M.G.***, *supra* at 1235-1236) (cleaned up)).

Presently, there is no indication in the certified record that the orphans' court made the requisite determination that then-six-year-old A.J.R.O.'s legal and best interests did not conflict. Since we cannot determine from the certified record whether the orphans' court fulfilled its § 2313(a) duty to "determine whether counsel can represent the dual interests before appointing an individual to serve as GAL/Counsel for a child[,]" we cannot fulfill our duty to *sua sponte* "verify that the orphans' court indicated that the attorney could represent the child's best interests and legal interests without conflict." ***K.M.G.***, *supra* at 1236.

Accordingly, we are constrained to vacate the termination decree and remand for further proceedings. On remand, we direct the orphans' court to fulfill its § 2313(a) duty as articulated in ***P.G.F.***, *supra*, and determine

whether Attorney Ullman may represent the dual interests of A.J.R.O. If the court determines that no conflict exists, the court shall re-enter its May 24, 2021 termination decree as to Mother.[11] If the court determines there is a conflict between A.J.R.O.'s legal and best interests, the court shall appoint separate legal counsel and conduct a new termination hearing as to Mother to provide legal counsel an opportunity to advocate on behalf of A.J.R.O.'s legal interests.

Decree vacated. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/8/2022

---

[11] We note that such an order would constitute a new, final order, appealable to this Court. *See In re H.S.W.C.-B.*, 836 A.2d 908, 911 (Pa. 2003) (holding that "an order terminating or preserving parental rights. . . shall be deemed final when entered.").