J-A11007-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: H.A.M.Y., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.F., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2250 EDA 2021 |

Appeal from the Order Entered October 5, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000288-2018

| | | |
|---|---|---|
| IN THE INTEREST OF: H.A.M.Y., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.F., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2251 EDA 2021 |

Appeal from the Decree Entered October 5, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000701-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: S.A.Y., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.F., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2252 EDA 2021 |

Appeal from the Order Entered October 5, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000287-2018

| IN THE INTEREST OF: S.A.Y., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.F., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2253 EDA 2021 |

Appeal from the Decree Entered October 5, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000702-2019

| IN THE INTEREST OF: A.A.A.M.Y., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.F., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2254 EDA 2021 |

Appeal from the Order Entered October 5, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0052641-2010

| IN THE INTEREST OF: A.A.A.M.Y., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.F., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2255 EDA 2021 |

Appeal from the Decree Entered October 5, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000704-2019

J-A11007-22

BEFORE: BOWES, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY BOWES, J.:                    **FILED MAY 10, 2022**

C.F. ("Mother") appeals from the October 5, 2021 decrees that terminated involuntarily her parental rights to three of her children, H.A.M.Y, born in November 2014, S.A.Y., born in April 2011, and A.A.A.M.Y., born in December 2009, as well as the orders entered the same date that changed each child's permanent placement goal to adoption.[1] We affirm the goal change orders, vacate the termination decrees, and remand for proceedings consistent with this memorandum.[2]

We glean the following from the record. As it pertains to the instant appeal, Mother and Father are the parents of six minor children. In addition to the three children at issue in this appeal, H.A.M.Y., S.A.Y., and A.A.A.M.Y., they are also the parents of A.Q.M.Y., born in December 2008, S.M., born in December 2007, and A.M., born in March 2005. The family has an extensive history with the Department of Human Services ("DHS"). The most recent contact occurred in December 2017, when DHS received a Child Protective Services report that A.Q.M.Y. had a fractured hand and was not receiving prompt medical care. At the time of the report, all six children were living

_____

[1] This Court consolidated Mother's appeals *sua sponte*. We note that the trial court also terminated the parental rights of the children's father, G.Y. ("Father"). Father is not a party to this appeal.

[2] Since Mother's brief has abandoned any argument in support of the appeals from the goal change orders, we affirm those orders without further discussion. ***See Commonwealth v. Heggins***, 809 A.2d 908, 912 n.2 (Pa.Super. 2002) (citation omitted) ("[A]n issue identified on appeal but not developed in the appellant's brief is abandoned and, therefore, waived.").

- 3 -

with Mother. Upon investigation, DHS also became concerned that the children were overdue for medical and dental care, their behavioral health needs were not being met, allegations of sibling conflict were not being addressed, they lacked appropriate clothing, and the five school-aged children were not in school. Additionally, there were concerns regarding domestic violence, Mother's physical and mental health, lack of cooperation by Mother and Father with DHS, and general parenting concerns. All six children were removed from the home and adjudicated dependent in February 2018. H.A.M.Y., S.A.Y., and A.A.A.M.Y. were placed in separate resource homes.[3]

Mother's single case plan objectives were to comply with court-ordered random drug screens, complete and comply with recommendations following a Clinical Evaluation Unit ("CEU") assessment and behavioral health, parenting capacity, and IQ evaluations, sign all necessary consent and release forms, attend the Achieving Reunification Center ("ARC") for appropriate services, visit with the children, provide documentation regarding housing and employment, and cooperate with the assigned CUA.

Although Mother missed multiple appointments, she attended her CEU assessment in October 2018, complied with the IQ evaluation, and completed

---

[3] H.A.M.Y.'s foster home is a pre-adoptive resource. S.A.Y.'s placement at the time of the termination hearing was not a pre-adoptive resource and the community umbrella agency ("CUA") believed she would benefit from child-specific recruitment services to locate a pre-adoptive family. A.A.A.M.Y.'s placement was a pre-adoptive resource but due to an incident, that home was no longer pre-adoptive at the time of the hearing. Turning Points for Children was exploring alternative treatment-level homes and CUA planned to request that the search be limited to homes that are pre-adoptive.

her ARC referrals. She did not do the behavioral health or parenting capacity evaluations. From 2019 through 2021, Mother did not comply with any court-ordered random drug screens. Mother was briefly employed in 2020; she was unemployed in 2021. Public benefits constituted her sole source of income. A walk-through of her home was deemed satisfactory in June 2021. However, her gas was subsequently shut off due to the bill reaching approximately $5,700.00 in arrears. Without gas, her home did not have heat or hot water. Additionally, Mother declined consent to recommended medicine for S.A.Y.

Regarding visitation, Mother has weekly phone calls with the children and the opportunity for weekly in-person visits. During the phone calls, Mother occasionally needs to be redirected about not promising things outside her control. Over the three years since the children had been placed, Mother never progressed to unsupervised visits. In fact, although visits were initially positive, over time the children became more uncomfortable and the visitation coach noted that progress had instead regressed. A.A.A.M.Y. wrote a goodbye letter to Mother in December 2019. At the time of the October 2021 termination hearing, S.A.Y. and A.A.A.M.Y. refused to attend in-person visits or join the group phone calls consistently. In 2021, Mother had less than five visits with H.A.M.Y., less than five visits with S.A.Y., and a single visit with A.A.A.M.Y. Throughout the life of this case, Mother attended approximately forty-one percent of the offered visits with her six children. Most of the missed visits were due to Mother not confirming on time. Additionally, Mother expressed concerns with in-person visits due to the COVID-19 pandemic.

Based on the foregoing, DHS deemed Mother's compliance with her single case plan goals to be minimal. In September 2019, DHS filed a petition to terminate Mother's parental rights as to H.A.M.Y., S.A.Y., and A.A.A.M.Y. Following several continuances, a hearing was held on October 5, 2021.[4] DHS presented the testimony of Kaitlin Sullivan, CUA case management supervisor and previously the family's case manager, as well as Quincy Marshall, the visitation coach.[5] Mother testified on her own behalf. At the conclusion of the hearing, the trial court terminated Mother's parental rights as to H.A.M.Y., S.A.Y., and A.A.A.M.Y. pursuant to § 2511(a)(2), (5), (8), and (b).

Mother filed timely notices of appeal and concise statements pursuant to Pa.R.A.P. 1925(a)(2). The trial court complied with Rule 1925(a). Mother presents the following issues for our consideration:

1. Whether the trial court erred by terminating the parental rights of Appellant, Mother, under 23 Pa.C.S.A. § 2511 subsections (a)(2), (a)(5) and (a)(8)?

---

[4] The trial court appointed Lisa Marie Visco, Esquire, as the guardian *ad litem* ("GAL") and legal counsel during the dependency proceedings to represent H.A.M.Y. and S.A.Y. Attorney Visco also acted as GAL and legal counsel for H.A.M.Y. and S.A.Y. during the termination proceedings and filed a brief on their behalf with this Court in support of the termination decrees and goal change orders. As discussed at length *infra*, the record is unclear as to A.A.A.M.Y.'s representation. We note with disapproval that no brief has been filed on behalf of A.A.A.M.Y. in this Court.

[5] In addition to a hearing on the termination of Mother's parental rights as to H.A.M.Y., S.A.Y., and A.A.A.M.Y., the court also heard testimony regarding permanent legal custody ("PLC") petitions for S.M. and A.M. DHS had filed a petition to terminate Mother's parental rights as to A.Q.M.Y., but at the hearing DHS withdrew that petition in anticipation of a future PLC petition.

2. Whether the trial court erred by finding, under 23 Pa.C.S.A. § 2511(b), that termination of Appellant's parental rights best serves the children's developmental, physical and emotional needs and welfare?

Mother's brief at 5 (unnecessary capitalization omitted).

Before reaching the merits of Mother's appeal, we must first address *sua sponte* the representation of H.A.M.Y., S.A.Y., and A.A.A.M.Y. "Given the critical importance and permanency of termination proceedings, as well as children's inability to navigate the termination process themselves," our Supreme Court has held that "appellate courts should engage in *sua sponte* review to determine if orphans' courts have appointed counsel to represent the legal interests of children in contested termination proceedings, in compliance with Subsection 2313(a)."[6] ***In re Adoption of K.M.G.***, 240 A.3d 1218, 1235 (Pa. 2020).

Moreover, "where the orphans' court has appointed a single attorney to serve as [GAL] and legal counsel to represent both the child's best interests and legal interests, [our Supreme Court] concluded an appellate court should

---

[6] This subsection provides as follows:

> **(a) Child.--**The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a [GAL] to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S. § 2313(a).

review *sua sponte* whether the court made a determination that those interests did not conflict." ***In re P.G.F***, 247 A.3d 955, 964–65 (Pa. 2021). The Court "cautioned that 'appellate review of this question does not involve second-guessing whether GAL/Counsel in fact had a conflict but solely whether the orphans' court made the determination in the first instance.'" ***Id***. at 965 (quoting ***K.M.G.***, ***supra*** at 1235-36) (cleaned up)).

We begin our review with A.A.A.M.Y.'s representation. The certified record reveals that the trial court initially appointed the Support Center for Child Advocates ("SCCA") as legal counsel and GAL for A.A.A.M.Y. in the dependency matter. In August 2018, the SCCA filed a motion to withdraw as counsel and GAL due to a concurrent conflict of interest. The trial court granted the motion to withdraw and appointed Attorney McLaughlin to represent A.A.A.M.Y. ***See*** Status Review Order, 9/20/18. However, the accompanying letter of appointment within the certified record, which is undated, did not reference A.A.A.M.Y. Instead, the letter notified Attorney McLaughlin that on September 20, 2018, the trial court appointed him as counsel and GAL for A.Q.M.Y. Notwithstanding this discrepancy, Attorney McLaughlin was listed as GAL for A.A.A.M.Y. on all subsequent review orders.

A permanency hearing was held in March 2019. When the trial court inquired as to who represented A.A.A.M.Y., Attorney McLaughlin stated that he only represented A.Q.M.Y. and that he did not "have any indications that [he] was appointed for anybody else." ***See*** N.T., 3/11/19, at 9. The trial court stated its belief that it had appointed Attorney McLaughlin to represent

- 8 -

A.Q.M.Y. and A.A.A.M.Y. The court clerk and Joshua Weil, Esquire, confirmed that was their recollection as well. Despite Attorney McLaughlin's statement that he did not have anything for A.A.A.M.Y., the trial court stated that it "did officially appoint" him to represent A.Q.M.Y. and A.A.A.M.Y. *Id*. at 9-10.

Critically, regardless of this exchange in early 2019, no attorney claimed to represent A.A.A.M.Y. at the October 2021 termination hearing. Attorney McLaughlin stated that he represented A.Q.M.Y., Attorney Visco stated that she represented the female children, S.M., S.A.Y., and H.A.M.Y., and Attorney Weil stated that he represented A.M. *See* N.T., 10/5/21, at 3-4. This time, the trial court did not inquire as to who was representing A.A.A.M.Y., and the proceedings commenced.

During the hearing, Attorney McLaughlin made two references to A.A.A.M.Y. First, after cross-examining Ms. Sullivan with respect to A.Q.M.Y., Attorney McLaughlin stated, without being asked, that he did not "have any further questions, and I would just request – I checked with the clerk. I know I have a representation letter for [A.Q.M.Y.], but I don't have anything on the – in the files, which I confirmed for [A.A.A.M.Y.]" *Id*. at 48. The trial court responded, "Okay[,]" and proceeded to Attorney Weil for cross-examination on behalf of A.M. Second, at the conclusion of the hearing, Attorney McLaughlin briefly argued that "I would just incorporate [DHS's] argument and request that the goal be changed to termination for [A.A.A.M.Y.] - - I mean, excuse me, adoption." *Id*. at 169.

Adding to the confusion, Attorney McLaughlin is listed as the GAL for A.A.A.M.Y. in the relevant decree and order appealed from, whereas Attorney Visco is listed as the GAL for A.A.A.M.Y. in this Court. Regardless, neither Attorney McLaughlin nor Attorney Visco has purported to represent the legal interest of A.A.A.M.Y. on appeal or presented his preferred outcome in a brief to this Court.

In sum, the certified record bears out that the trial court purported to appoint Attorney McLaughlin as counsel and GAL for A.A.A.M.Y. in the dependency matter. However, it does not appear that Attorney McLaughlin was in fact appointed to represent A.A.A.M.Y. in the termination matter. Despite offering a brief argument on behalf of A.A.A.M.Y.'s goal change at the conclusion of the termination hearing, Attorney McLaughlin insisted that he did not have paperwork pertaining to an appointment as counsel for A.A.A.M.Y., did not ask any questions on behalf of A.A.A.M.Y., and did not otherwise represent A.A.A.M.Y.'s legal or best interests at the hearing. Based on the foregoing, we conclude that the trial court did not fulfill its § 2313(a) duty to appoint counsel to represent A.A.A.M.Y. in the contested termination proceeding.[7]

---

[7] As further evidence that A.A.A.M.Y. lacked the benefit of § 2313 counsel at the termination hearing, we observe that the trial court's Rule 1925(a) opinion mischaracterizes the testimony offered regarding A.A.A.M.Y.'s placement and adoption wishes. *See* Trial Court Opinion, 1/4/21, at 6 (confusing the placements of H.A.M.Y. and A.A.A.M.Y.; attributing A.M.'s adoption wishes to A.A.A.M.Y.).

- 10 -

Accordingly, we are constrained to vacate the decree terminating Mother's parental rights as to A.A.A.M.Y. and remand for a new termination hearing to provide legal counsel an opportunity to advocate on behalf of A.A.A.M.Y.'s legal interests. The trial court shall appoint counsel to represent A.A.A.M.Y. and, if the court appoints a single attorney, shall determine on the record whether that attorney may represent the dual interests of A.A.A.M.Y.

We now turn to Attorney Visco's representation of H.A.M.Y. and S.A.Y. Consistent with our Supreme Court's holding in **K.M.G.**, **supra**, we verify that the trial court appointed Attorney Visco as legal counsel and GAL to represent H.A.M.Y. and S.A.Y. in the termination proceedings pursuant to § 2313(a). However, the record is bereft of any determination by the trial court that then-ten-year-old S.A.Y. or then-six-year-old H.A.M.Y. did not have conflicting legal and best interests. Accordingly, we cannot fulfill our duty to *sua sponte* "verify that the orphans' court indicated that the attorney could represent the child's best interests and legal interests without conflict." **K.M.G.**, **supra** at 1236.

Thus, we are also constrained to vacate the decrees terminating Mother's parental rights as to H.A.M.Y. and S.A.Y. and remand for further proceedings, albeit with a potentially more limited scope than those respecting A.A.A.M.Y. Specifically, on remand, we direct the trial court to fulfill its § 2313(a) duty as articulated in **P.G.F.**, **supra**, by determining on the record whether Attorney Visco may represent the dual interests of H.A.M.Y. and S.A.Y. If the court determines that no conflict exists for either child, the court

shall re-enter the respective termination decrees.[8] If, however, it determines there is a conflict between H.A.M.Y.'s legal and best interests or S.A.Y.'s legal and best interests, the court shall appoint separate legal counsel for that child and conduct a new termination hearing to give legal counsel a chance to advocate on behalf of that child's legal interests. ***See In the Interest of A.J.R.O.***, 270 A.3d 563, 571 (Pa.Super. 2022).

Orders affirmed. Decrees vacated. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/10/2022

---

[8] Such an order would constitute a new, final order, appealable to this Court. ***See In re H.S.W.C.-B.***, 836 A.2d 908, 911 (Pa. 2003) (holding that "an order terminating or preserving parental rights. . . shall be deemed final when entered.").