J-A12021-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.Y., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: T.Y., MOTHER | : | |
| | : | |
| | : | No. 2819 EDA 2022 |

Appeal from the Order Entered September 26, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000992-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: S.D.Y.T., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: T.Y., MOTHER | : | |
| | : | |
| | : | No. 2820 EDA 2022 |

Appeal from the Decree Entered September 26, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000247-2022

BEFORE:  OLSON, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED JULY 18, 2023**

T.Y. (Mother) appeals from the order terminating her parental rights to S.Y. (Child), born in September of 2020, and changing Child's permanency goal to adoption.  After careful review, we vacate the trial court's order and remand for further proceedings consistent with this memorandum.

The trial court summarized the underlying history of this matter as follows:

DHS first became aware of this family on April 8, 2019, when it received a General Protective Services (GPS) report indicating concerns for the safety of Child's older sibling and Mother's mental health issues. The report stated that Mother had been hospitalized for mental health treatment at Fairmount Behavioral Health system for exhibiting erratic behavior such as yelling in the streets and threating family members with knives. The report further stated that Mother tested positive for marijuana, cocaine, oxycodone, and benzodiazepines in the past. The report was determined to be valid and Child's sibling was committed to DHS. On May 1, 2020, the Philadelphia Police Department received a GPS report that on April 30, 2020, Mother was located on a highway attempting to sell Child's sibling for drugs, hitting herself, talking to people who were not present, throwing food and her mobile phone, and attempting to walk into traffic. Mother failed to provide a urine sample for toxicology. The report was determined to be valid.

On September 4, 2020, the day following the birth of Child, DHS received a GPS report which alleged Mother tested positive for Marijuana, Oxycodone, Fentanyl, and Tramadol during Child's birth. Child tested positive for Marijuana and Oxycodone. Child was born at thirty-three weeks gestation, weighing three pounds and eight ounces. Child was admitted to the Neonatal Intensive Care Unit. Mother admitted to using Marijuana, Oxycontin, and Tramadol but denied using Fentanyl. Mother was diagnosed with Bi-Polar Disorder, Schizoaffective Disorder, Major Depressive Disorder, Cannabis and Opiate use, and showed severe psychotic symptoms. Mother was not receiving drug or alcohol treatment. Mother has a history of unstable housing and was residing in a hotel. On September 18, 2020,[1] DHS obtained an Order of

---

[1] The record reflects that the trial court initially appointed Claire Leotta, Esq. to act as Child's guardian *ad litem* (GAL). **See** Recommendation for Shelter Care, 9/21/20, at 2. On August 30, 2022, the trial court appointed Irene Julie Levy, Esq. to serve as Child's GAL. **See** Letter of Appointment, 8/30/22. There is no indication that the trial court appointed separate legal counsel on Child's behalf.

Protective Custody (OPC) for Child and placed Child into the pre-adoptive home of Tamekia McFadden. The adjudicatory hearing was held on November 17, 2020, whereby this court adjudicated Child dependent based on present inability of parents to provide proper parental care and control, and Child was fully committed to DHS.

Trial Ct. Op., 1/13/23, at 1-2.

On April 13, 2022, DHS filed a petition to terminate Mother's parental rights to Child and change Child's permanency goal to adoption. The trial court conducted a hearing on September 26, 2022. At that time, DHS presented testimony establishing that Mother's reunification goals had remained the same throughout the life of the case and that Mother had failed to make any progress on those goals. *See* N.T. Hr'g, 9/26/22, at 28.

With respect to the testimony regarding Child's bond with Mother, the trial court explained:

Mother [] testified that Child called [Tameika McFadden (Foster Mother)] her mother and she had to tell Child who she is in relation to her. She also stated that while visiting with Child they talk and play and that Child called her "mom" twice. Mother admitted that Child does not know her "like that" but believes Child is bonded with her. . . . Mother testified that she did not want her rights terminated.

[Community Umbrella Agency (CUA) case manager supervisor Alicia] Lomax testified about the relationship and lack of parental bond Child and Mother have. She stated that Child and Mother do not share a parental bond and Child does not look to Mother as her caregiver. She further testified that Child does not have a close relationship with Mother nor does Child seek care or comfort from Mother. [CUA case manager Amira] Drayton, who was the visitation coach on this case for about five months, physically observed Mother's interaction with Child. While Ms. Drayton is uncertain of the exact number of visits she observed, she testified that there was no bond between Mother and Child. Ms. Lomax

also testified about the relationship and bond that the Child shares with her pre- adoptive family. Child is two years old and has resided in this home for her entire life. Ms. Lomax testified that for six months she personally completed monthly home visits [with Foster Mother] and witnessed interactions between Child and [Foster Mother]. She stated that she last saw Child in the home of [Foster Mother] in May of 2022. She testified that Child has a close relationship with her Foster Mother . . . and calls her "mom." She further stated that [Foster Mother] meets Child's daily emotional and medical needs, and that Child looks to [Foster Mother] for care and comfort. She stated that [Foster Mother] provides Child with safety and stability as Child has been in her current placement since birth. Additionally, Ms. Lomax testified that [] Child would not suffer any harm from terminating Mother's [] parental rights and that she believes it is in the best interest of Child to change the goal to adoption.

Trial Ct. Op. at 5-6.

At the conclusion of the hearing, the trial court entered a decree terminating Mother's parental rights and changing Child's permanency goal to adoption pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), and (8) and finding that termination of Mother's parental rights best served Child's developmental, physical, and emotional needs and welfare pursuant to 23 Pa.C.S. § 2511(b).

Mother subsequently filed a timely notice of appeal. Both Mother and the trial court complied with Pa.R.A.P. 1925.

On appeal, Mother raises the following issue for review:

Whether the trial court erred by finding, under 23 Pa.C.S. § 2511(b), that termination of Mother's parental rights best serves the [Child's] developmental, physical and emotional needs and welfare.

Mother's Brief at 4 (some formatting altered).[2]

Before addressing Mother's claim, we must review whether the trial court appointed legal counsel to represent Child for the termination proceedings pursuant to 23 Pa.C.S. § 2313(a). *See In re Adoption of K.M.G.*, 240 A.3d 1218, 1235 (Pa. 2020). Our Supreme Court has interpreted Section 2313(a) "as requiring 'that the common pleas court appoint an attorney to represent the child's legal interest, *i.e.* the child's preferred outcome.'" *Id.* (citation omitted). Additionally, the failure to appoint a "'separate attorney to represent the child's legal interests constitutes structural error, meaning it is not subject to a harmless-error analysis.'" *Id.* (citations omitted).

It is well settled that "a single attorney cannot represent a child's best interests and legal interests if those interests conflict." *Id.* at 1236 (citation omitted). As such, our Supreme Court has held that **before** appointing an individual to serve as both guardian *ad litem* (GAL) and legal counsel for a child, the trial court "must determine whether counsel can represent the dual interests . . ." *Id.* Further, where the trial court appoints one attorney "to represent both the child's best interests and legal interests, appellate courts should review *sua sponte* whether the [trial] court made a determination that those interests did not conflict." *Id.* at 1235.

_____

[2] We note that Mother did not raise any claims concerning the basis for termination under 23 Pa.C.S. § 2511(a) in her Rule 1925(a)(2) statement nor does she raise those issues in her brief.

Here, the record reflects that the trial court appointed Attorney Levy as Child's GAL in August of 2022. *See* Trial Ct. Order, 8/30/22. The trial court did not appoint separate counsel to represent Child's legal interests. In the absence of a conflict between Child's best interests and legal interests, Attorney Levy could have acted in a dual capacity on Child's behalf. However, there is no indication that the trial court made any determination as to whether there was a conflict between Child's legal interests and best interests.[3] *See K.M.G.*, 240 A.3d at 1236. For these reasons, we are constrained to vacate the involuntary termination decree and remand for further proceedings. *See id.*; *see also Interest of A.J.R.O.*, 270 A.3d 563, 570-71 (Pa. Super. 2022) (reiterating that "appellate review of this question does not involve second–guessing whether GAL/[legal c]ounsel in fact had a conflict but solely whether the [trial] court made the determination in the first instance" (citation omitted)).

On remand, within thirty days of the date the record is remitted, we direct the trial court to fulfill its Section 2313(a) duty as articulated in *K.M.G.* and determine whether Attorney Levy may represent both the best interests and legal interests of Child. If the trial court determines that no conflict exists

---

[3] We recognize that Child was only two years old at the time of the termination hearing. However, the trial court did not determine, nor did counsel indicate on the record, whether Child was too young to articulate a preference as to the outcome of the proceedings, such that no conflict could exist. *See In re T.S.*, 192 A.3d 1080 (Pa. 2018). Further, although we acknowledge that remand will result in a delay, we are not in a position to make this determination on the trial court's behalf. *See A.J.R.O.*, 270 A.3d at 570-71.

between Child's dual interests, then the court shall re-enter the termination order as to Mother. If the trial court determines that there is a conflict between Child's best interests and legal interests, then the court shall appoint separate legal counsel for Child and conduct a new termination hearing at which time Child's legal counsel can advocate on behalf of Child's legal interests. *See K.M.G.*, 240 A.3d at 1235.

Order vacated. Case remanded with instructions. Jurisdiction relinquished.

Judge McLaughlin joins the memorandum.

Judge Olson files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/18/2023