J-S29002-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: N.M.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: B.N.D., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 430 WDA 2025 |

Appeal from the Order Dated March 13, 2025
In the Court of Common Pleas of Westmoreland County Orphans' Court
at No(s): No. 82 of 2024

BEFORE: NICHOLS, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY NICHOLS, J.: **FILED: JANUARY 13, 2026**

Appellant B.N.D. (Mother) appeals from the involuntary termination of her parental rights to N.M.D. (Child), who was three and a half years old at the time of the termination order.[1] We vacate and remand with instructions.

Briefly, the trial court provided the relevant procedural history of this matter as follows:

> [Westmoreland County Children's Bureau (the Agency)] obtain[ed] custody of Child and plac[ed] her into foster care on July 29, 2022, following an adjudication hearing. The reasons for [Child's] placement at that time included Mother failing to follow a safety plan by continuing to subject [Child] to unsafe conditions, both in terms of the home environment and the types of people that Mother would allow to have access to [Child]. Additionally, . . . [the Agency's] caseworker supervisor Amber Wanamaker [testified] that Mother exhibited a lack of parental skills and sense of responsibility necessary to care for [Child]. Prior to removal, Mother had been working with Project STAR and the STAR Babies

---

[1] The trial court's order also terminated the parental rights of D.J.D. (Father). Father is not a party to this appeal.

program for a full year. Despite a year of instruction and assistance, Mother was still found to be leaving items such as batteries within reach of [Child] on a regular basis and allowing individuals with criminal records that included sexual violence toward children to be around [Child].

Following adjudication, the [trial] court held permanency review hearings at regular intervals. At each hearing, the [trial] court rated Mother's progress toward alleviating the circumstances which led to the placement of [Child]. Although [the Agency] contracted with providers to address mental health and parenting concerns, Mother was never rated above minimal progress toward alleviating those circumstances. She had been unsuccessfully discharged from mental health providers and parenting providers throughout the history of this case.

The [Agency] petitioned for involuntary termination on September 13, 2024.

Trial Ct. Op., 4/30/25, at 3 (some formatting altered).

We add that the trial court originally scheduled the termination of parental rights (TPR) hearing for November 13, 2024. On that date, neither Father nor Mother's counsel appeared, and the trial court continued the hearing to February 13, 2025 and February 27, 2025. *See* N.T., 11/13/24, at 2-5.

Adam Gorzelsky, Esq., served as Child's guardian *ad litem* (GAL) throughout these proceedings. *See* N.T., 11/13/24, at 1-3; N.T., 2/13/25, at 1, 3; N.T., 2/27/25, at 1, 3. On November 13, 2024, the trial court asked Attorney Gorzelsky, "are you able to represent both the best interest and the legal interest of the minor?" to which Attorney Gorzelsky replied, "Yes[,]" and the trial court responded, "Okay." N.T., 11/13/24, at 3. On February 13, 2025, the Agency's counsel requested "that Attorney Gorzelsky put on the

record that he can act in the capacity as both attorney and [GAL,]" to which Attorney Gorzelsky replied "I can, Your Honor[,]" and the trial court responded, "Okay. Then, let's proceed." N.T., 2/13/25, at 4.

At the TPR hearing on February 13, 2025, Dr. Richelle O'Malley, co-owner of In-Clusion, a provider of mental health treatment for children and adults, testified that she had therapeutically supervised visits between Mother and Child. *See* N.T., 2/13/25, at 15-16. Dr. O'Malley testified that during these supervised visits, she had directed Mother to "narrate what [Child] was doing to keep her engaged" because "[r]eflection of the child's language[,] . . . making sure that mom was repeating back," was a parenting skill to "show [Child] that [Mother] was engaged." *Id.* at 37-38. Further, at the hearing on February 27, 2024, Amber Wannamaker, an Agency caseworker, testified that during a supervised visitation Mother had been in "a fight with a friend and had wrecked her car . . . [and] was not dressed appropriately . . . in very short shorts, showing all of her injuries" and that Child "kept drawing attention to the injuries and wanting an explanation." N.T., 2/27/25, at 18.

Additionally, the Agency submitted copies of permanency review orders from Child's dependency matter as exhibits at the TPR hearing. *See* N.T., 2/13/25, at 8-10 (offer and admission of Agency Ex. 1) According to these orders, at several permanency review hearings during Child's dependency case, the trial court found that Child was "doing well in a pre-adoptive foster home" and that the Agency had "no concerns about [] Child's development as she is up to date medically." Agency's Ex. 1 (Permanency Review Orders,

11/9/23, at 3; 5/31/24, at 3; and 11/13/24, at 3). At a permanency review hearing on November 6, 2024, after the Agency filed the TPR petition, an Agency caseworker testified that "Child had been experiencing a lot of anxiety around visits, but a reduction in the frequency of visits has alleviated some of this stress." Agency's Ex. 1 (Permanency Review Order, 11/13/24, at 3).

On March 13, 2025, the trial court entered an order granting the Agency's petition to terminate Mother's parental rights pursuant to 23 Pa.C.S. §§ 2511(a)(2), (a)(8), and 2511(b). *See* Termination Order, 3/13/25. Mother filed a timely appeal of the TPR order and both Mother and the trial court complied with Pa.R.A.P. 1925.

On appeal, Mother raises the following claim:

Whether the trial court erred in finding by clear and convincing evidence that the [Agency] met its burden under 23 Pa.C.S. § 2511(b).

Mother's Brief, at 7 (some formatting altered).

Before addressing Mother's claims, we must first address Child's right to legal counsel in the TPR proceedings. *See In re Adoption of K.M.G.*, 240 A.3d 1218, 1224, 1235-36 (Pa. 2020) (holding that appellate courts should review *sua sponte* whether the trial court appointed counsel to represent a child's legal interests in TPR proceedings and, in the event that the same attorney was appointed to represent a child's best interests as well as legal interests, whether the trial court determined that there was no conflict

between these interests prior to making the appointment); ***see also In re H.H.N.***, 296 A.3d 1258, 1264 (Pa. Super. 2023) (same).

Section 2313(a) of the Adoption Act provides, in relevant part:

The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian *ad litem* to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S. § 2313(a).

In applying Section 2313(a), our Supreme Court has recognized that where "a child's legal interests conflict with the child's best interests, those interests must be represented by separate individuals during the termination proceedings to ensure that the child's legal interests are presented to the [trial] court." ***K.M.G.***, 240 A.3d at 1234 (footnotes omitted); ***see also id.*** at 1236 (concluding that "a single attorney cannot represent a child's best and legal interest if those interests conflict" (citing ***In re T.S.***, 192 A.3d 1080, 1082 (Pa. 2018))).

Specifically, the ***K.M.G.*** Court held that

[w]here a [trial] court has appointed a GAL/Counsel to represent both the child's best interests and legal interests, appellate courts should review *sua sponte* **whether the [trial] court made a determination** that those interests did not conflict. . . .

[T]he [trial] court must determine whether counsel can represent the dual interests before appointing an individual to serve as GAL/Counsel for a child. . . . [A]ppellate courts should verify that

- 5 -

the [trial] court indicated that the attorney could represent the child's best interests and legal interests without conflict. . . .

[This] *sua sponte* review . . . evaluate[s] (1) whether the [trial] court appointed counsel to represent the legal interests of the child[] and[,] (2) if the appointed counsel also serves as GAL, whether the [trial] court determined that the child's best interests and legal interests did not conflict.

*Id.* at 1235-36 (citation omitted and emphasis added).

Subsequently, this Court in *In re Adoption of A.C.M.*, 333 A.3d 704 (Pa. Super. 2025), noted that

[i]n *K.M.G.*, our Supreme Court clearly stated the primary role of trial courts in determining whether children in contested [TPR] proceedings required separate legal and best interests' counsel. To fulfill its statutory duty under Section [] 2313, the [trial] court[] must . . . **make that determination prior to appointment**.

*A.C.M.*, 333 A.3d at 708 (citing *K.M.G.*, 240 A.3d at 1233-39) (some citations omitted and emphasis original). The failure of a trial court to "appoint an attorney to represent the child's legal interests, *i.e.,* the child's preferred outcome, . . . constitutes structural error in the termination proceedings." *K.M.G.*, 240 A.3d at 1224 (citing *T.S.*, 192 A.3d at 1082); *see also In re L.B.M.*, 161 A.3d 172, 183 (Pa. 2017) (holding that "[t]he denial of mandated counsel compromises the framework of the proceedings and constitutes a structural error"); *see also A.C.M.*, 333 A.3d at 708. After conducting a *sua sponte* review, our Supreme Court in *K.M.G.* concluded that the trial court had "appointed non-conflicted legal counsel such that a remand is not required." *K.M.G.*, 240 A.3d at 1238. On a different set of facts, this Court in *A.C.M.* concluded that the trial court committed structural error in

"assign[ing to the GAL] the responsibility of identifying any conflict of interest" between that counsel's duties as GAL and as the child's legal counsel. ***A.C.M.***, 333 A.3d at 708. ***A.C.M.*** remanded for the trial court to hold a hearing to determine if a conflict existed between the child's best interests and legal interests. ***See id.*** at 709. The ***A.C.M.*** Court further explained that if no conflict existed, the trial court was to re-enter the TPR order; in the event of a conflict, the trial court was directed to hold a new TPR hearing where the child would be represented by separate legal counsel. ***See id.***; ***see also L.B.M.***, 161 A.3d at 183.

Relevantly, a TPR order may still be affirmed – even where a trial court failed to appoint separate legal counsel for the child – where the subject "child's wishes [could not] be ascertained." ***T.S.***, 192 A.3d at 1089. The ***T.S.*** Court explained that where "the preferred outcome of a child is incapable of ascertainment because the child is very young and pre-verbal[,] there can be no conflict between the child's legal interests and his or her best interests[.]" ***Id.*** at 1092.

Here, the trial court did not appoint separate Section 2313(a) legal counsel for Child. Instead, the trial court accepted Attorney Gorzelsky's statement that there was no conflict between Child's best interests and legal interests and allowed Attorney Gorzelsky to serve as both GAL and Child's

legal counsel.[2] *See* N.T., 11/13/24, at 2-3; N.T., 2/13/25, 1, 3-4; N.T., 2/27/25, at 1, 3. The trial court in its opinion states, without citation to the record, that, "[d]ue to the age and maturity level of [Child], . . . [Child's] legal and best interests [] were not in such conflict that would prevent Attorney Gorzelsky from representing both such interests[.]" Trial Ct. Op., 4/30/25, at 1. The record, however, does not reflect that the trial court itself made a determination that there was no conflict between Child's best interests and legal interests before appointing Attorney Gorzelsky as Child's legal counsel. Rather, the record reflects that the trial court delegated this responsibility to Attorney Gorzelsky. *See* N.T., 11/13/24, at 3; N.T., 2/13/25, at 4. Accordingly, the trial court failed to address whether Child had legal counsel in the TPR proceeding who could serve without conflict and, therefore, committed a structural error. *See* 23 Pa.C.S. § 2313(a); *K.M.G.*, 240 A.3d at 1234, 1236; *see also T.S.*, 192 A.3d at 1082; *A.C.M.*, 333 A.3d at 708; *L.B.M.*, 161 A.3d at 183.

Further, Child was three years and one month old when the Agency filed the TPR petition and was three and a half years old at the time of the TPR hearings. Child does not have any documented developmental delays or medical conditions. *See* Agency's Ex. 1 (Permanency Review Orders, 11/9/23, at 3; 5/31/24, at 3; and 11/13/24, at 3). Child cannot be described

---

[2] Our review of the certified record in this case reveals that the trial court did not enter an order appointing GAL to also represent Child's legal interests in this matter.

as 'pre-verbal' as she uses language and demands explanations about things she has observed. **See** N.T., 2/13/25, at 15-16, 37-38; N.T., 2/27/25, at 18. Accordingly, we may not apply the **T.S.** presumption that there was no conflict between Child's best interests and legal interests here because, while Child may be young, she is clearly not 'pre-verbal.' **See T.S.**, 192 A.3d at 1089. Therefore, we are constrained to vacate the TPR order below and remand for further proceedings.

Upon remittal of the record on remand, the trial court, consistent with Section 2313(a), **K.M.G.**, and **A.C.M.**, shall hold a hearing and determine whether there is a conflict between Child's best interests and legal interests that would prevent Attorney Gorzelsky from representing both interests. **See K.M.G.**, 240 A.3d at 1234-36; **A.C.M.**, 333 A.3d at 709.[3] If the trial court

_____

[3] At the conclusion of the TPR hearings, Attorney Gorzelsky's final statement on the TPR petition, provided in its entirety, is as follows:

> I feel for [Mother]. I understand where she's at with all of this, you know, her youth combined with, I think, some of her intellectual difficulties, I think, is what led us to this point.

> I hope – I know that, you know, I've dealt with [] the foster parents, a lot more early on in the case. I know there were some barriers that occurred because I know [the foster mother] and their family was having difficulty understanding that role of being the foster parents who have [Child] all the time and are looking out of her best interest, but also having to, kind of, straddle that line and work with the [A]gency and make sure that [Mother's] rights were being protected.

> I'm hopeful that once an adoption occurs in this case and that boundary kind of goes away, that that relationship between [the

*(Footnote Continued Next Page)*

determines that no conflict exists between the Child's best interests and legal interests, then it shall re-enter its order terminating Mother's parental rights, which will constitute a final, appealable order. *See A.C.M.*, 333 A.3d at 709 (citing *In re A.J.R.O.*, 270 A.3d 563, 570 (Pa. Super. 2022)). If the trial court determines that there is a conflict between Child's best interests and legal interests, then the trial court shall appoint separate legal counsel for Child and conduct a new TPR hearing. *See id.*; *see also K.M.G.*, 240 A.3d at 1235.[4] Notwithstanding our vacatur of the trial court's TPR order of March 13, 2025, we do not disturb Child's placement in foster care where she has

_____

> foster mother] and [M]other can improve to the point where [Mother] can still be involved in [Child's] life. I think that's what['s] best. I think that, unfortunately, [C]hild needs permanency. It's been quite some time. [Mother] has put in the efforts at some points, but hasn't put in the efforts at other points, but the results just start there. Unfortunately, from [M]other's standpoint, this is about the best interest for [Child].
>
> I think termination is appropriate.

N.T., 2/27/25, at 91-92.

While Attorney Gorzelsky's final statement addresses Child's best interests it does not state or address Child's preferred outcome and, ironically, serves as an illustration of why, in addition to a GAL, Section 2313(a) and *T.S.* and its progeny require trial courts to ensure that a child in TPR proceedings is represented by legal counsel cognizant of the duty to advocate for the child's preferred outcome. *See* 23 Pa.C.S. § 2313(a); *see also T.S.*, 192 A.3d at 1082; *K.M.G.*, 240 A.3d at 1234-36; *A.C.M.*, 333 A.3d at 708. Where this Court expected to find a clear statement of Child's preferred outcome, the record is silent.

[4] Because we resolve this appeal based on *sua sponte* addressing Child's right to legal counsel in the TPR proceedings, we do not reach the merits of Mother's claims.

been cared for since July 29, 2022. **See** Trial Ct. Op., 4/30/25, at 3. This will maintain the status quo while the trial court addresses the TPR issues consistent with this memorandum.

Termination order vacated. Remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 1/13/2026