J-S07001-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.F., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: E.T., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1136 WDA 2021 |

Appeal from the Order Entered September 8, 2021
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): CP-02-AP-0000068-2021

BEFORE:   OLSON, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY OLSON, J.:                    **FILED: MAY 20, 2022**

E.T. (Father) appeals from the order dated August 27, 2021, and entered on September 8, 2021, in the Court of Common Pleas of Allegheny County, that involuntarily terminated his parental rights to his son, S.F. (Child), born in May of 2016, pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b).[1]  After careful review, we vacate and remand for proceedings consistent with this memorandum.

Child is the youngest of three children born to Mother.  Allegheny County Children Youth and Families (CYF) became involved with this family on July 23, 2015, prior to Child's birth, due to concerns about Mother's substance

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] By the same order, the orphans' court terminated the parental rights of S.F. (Mother), Child's natural mother.  We dispose of Mother's appeal in a separate memorandum.

abuse and intimate partner violence between Mother and her paramour. N.T., 8/27/21, at 69. CYF provided services for the family. On November 8, 2015, Child's two older half-siblings, J.F. and F.F., were removed from Mother's care due to a violent incident that occurred while they were present in Mother's home. *Id.* The court placed Child in the protective custody of CYF when he was born several months later. *Id.* at 71. The orphans' court adjudicated Child dependent on July 20, 2016. On June 25, 2018, Child's dependency, and that of his half-siblings, was discharged as a result of Mother's cooperation with CYF and her completion of her FSP goals. *Id.* at 72. Child's father was unknown throughout most of his dependency case. Father was identified shortly before Child was returned to Mother. At that time, Mother indicated to CYF that Father visited with Child "sporadically," but Father was not in contact with CYF. *Id.* at 94.

Reunification between Mother and Child was short-lived. In October of 2018, CYF received another referral for this family, and the case was re-opened in December of 2018, due to Mother's neglect of her own mental health. Mother also informed CYF that she was experiencing severe depression. N.T., 8/27/21, at 72-73. In addition, CYF was concerned about Mother's general neglect and medical neglect of the children. *Id.*

On September 11, 2019, Child was adjudicated dependent a second time because Mother was not meeting Child's needs, and Father did not

respond to CYF's attempts to contact him. N.T., 8/27/21, at 75, 77. Child was placed in foster care the following day. *Id.*

Father presented to CYF in October of 2019. N.T., 8/27/21, at 77. According to Justine Walz, a CYF caseworker, CYF created a family service plan (FSP) for Father when the case re-opened. N.T., 8/27/21, at 78. The following permanency objectives existed for Father throughout Child's dependency: address drug and alcohol issues; provide safe and stable housing; improve parenting skills; and participate in visitation with Child. *Id.* at 96. Ms. Walz stated that Father did not request to have Child placed with him. Rather, Father indicated that he wanted Mother to regain custody and, if she could not, then he would address the goals that CYF and the court set for him. *Id.* at 98. As of October of 2020, Father did not complete his court-ordered goals such that Child could be reunified with him. *Id.* at 142.

On March 31, 2021, CYF filed a petition to terminate involuntarily Father's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b). A hearing occurred on August 27, 2021, which Father attended, was represented by counsel, and testified on his own behalf. In addition, Child, then five years old, was represented by Renee Colbert, Esquire, as Child Advocate.

CYF presented the testimony of its caseworker, Justine Walz; Rachel Wagner, program manager in the intake department at POWER, a substance abuse outpatient treatment facility; and Sarah Ulish, placement services

manager at Auberle, a non-profit social services agency. CYF entered the following exhibits relating to Father into evidence, which the orphans' court admitted: Father's POWER referral; the Family Service Plans (FSPs); the orphans' court orders; Father's criminal record; and evaluations by the court-appointed evaluator, Dr. Neil Rosenblum.

By order dated August 27, 2021, and entered on September 8, 2021, the orphans' court terminated Father's parental rights involuntarily pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), (8) and (b). On September 27, 2021, Father filed a notice of appeal along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On November 29, 2021, the orphans' court filed its Rule 1925(a) opinion.

On appeal, Father presents two issues for our review:

1. Did the [orphans'] court abuse its discretion and/or err as a matter of law in granting the petition to involuntarily terminate Father's parental rights pursuant to 23 Pa.C.S.[A.] § 2511 (a)(2)[,] (5) and (8)?

2. Did the [orphans'] court abuse its discretion and/or err as a matter of law in concluding that CYF met its burden of proving by clear and convincing evidence that termination of Father's parental rights would best serve the needs and welfare of the child pursuant to 23 Pa.C.S.[A.] § 2511(b)?

Father's Brief at 6.

We review this appeal according to an abuse of discretion standard, as follows.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported

- 4 -

by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Sections 2511(a)(2), (5), (8) and (b) provide as follows:

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . .

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and

- 5 -

causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . .

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination  of the parental rights would best serve the needs and welfare of the child.

. . .

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

. . .

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b); *see also In re B.L.W.*, 843

A.2d 380, 384 (Pa. Super. 2004) (*en banc*) (stating that we need only agree

with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm).

Before reaching the merits of Father's issues on appeal, we must first address *sua sponte* whether, pursuant to 23 Pa.C.S.A. § 2313(a),[2] the orphans' court appointed legal counsel to represent Child during the contested involuntary termination proceeding. **In re Adoption of K.M.G.**, 240 A.3d 1218, 1235 (Pa. 2020). Our Supreme Court has interpreted Section 2313(a) "as requiring 'that the common pleas court appoint an attorney to represent the child's legal interest, *i.e.* the child's preferred outcome.'" **Id.** (citing **In re T.S.**, 192 A.3d 1080, 1082 (Pa. 2018)). The failure to appoint a "'separate attorney to represent the child's legal interests constitutes structural error, meaning it is not subject to harmless error analysis.'" **Id.** (citing **In re T.S.**, **supra**; **In re L.B.M.**, 161 A.3d 172, 183 (Pa. 2017)).

The Court reiterated that "a single attorney cannot represent a child's best interest and legal interest if those interests conflict." **K.M.G.**, 240 A.3d

---

[2] This subsection provides as follows:

> **(a)** **Child.--**The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian ad litem to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S.A. § 2313(a).

- 7 -

at 1236 (citing **In re T.S.**, **supra**). As such, the Court concluded, "the orphans' court must determine whether counsel can represent the dual interests **before** appointing an individual to serve as [Guardian *ad litem*]/Counsel for a child." **Id.** (emphasis added). In addition, the Court held that "where an orphans' court has appointed a [Guardian *ad litem*]/Counsel to represent both the child's best interest and legal interest, appellate courts should review *sua sponte* whether the orphans' court made a determination that those interests did not conflict." **Id.** at 1235.

Instantly, a pre-trial order dated and filed on April 23, 2021, at Child's orphans' court docket number, provided, "Office of Conflict Counsel is appointed as counsel for the child." Pre-trial Order, 4/23/21, at ¶ 2. On May 12, 2021, Attorney Colbert filed a praecipe for appearance as Child Advocate at the orphans' court docket number. Our review of the certified record reveals no other order of appointment for representation of Child and no other praecipe for appearance filed at the orphans' court docket number. Indeed, Attorney Colbert served as Child's sole attorney during the termination proceeding, and she advocated for the termination of Father's parental rights as being in Child's best interest.[3] N.T., 8/27/21, at 4, 221.

We are unable to determine from the certified record the manner in which the orphans' court appointed Attorney Colbert. The order of

---

[3] In this appeal, Attorney Colbert filed an appellee brief in support of the involuntary termination order.

appointment refers to the Office of Conflict Counsel, but the record does not indicate if Attorney Colbert is associated with that office. Furthermore, the order uses the term "counsel," but does not specify if it meant legal counsel, as in an attorney representing Child's preferred outcome. Moreover, the only indication of Attorney Colbert's role is her argument supporting Child's best interest, suggesting that she was serving as his guardian *ad litem*. Given that Attorney Colbert was Child's sole attorney during the involuntary termination proceeding, we have reviewed the certified record to confirm that the orphans' court determined prior to the proceeding that Child's best interest and legal interest did not conflict. Nothing in the record indicates whether the orphans' court fulfilled its duty in this regard under Section 2313(a), as construed by our Supreme Court in **K.M.G.**, 240 A.3d at 1236. Therefore, we are unable to fulfill our duty to verify *sua sponte* that the orphans' court determined that Attorney Colbert could represent S.F.'s dual interests without conflict. **Id.**

Accordingly, we are constrained to vacate the involuntary termination decree and remand for further proceedings. **See Interest of A.J.R.O.**, 270 A.3d 563 (Pa. Super. 2022). On remand, we direct the orphans' court to fulfill its Section 2313(a) duty as articulated in **K.M.G.**, **supra**, and determine whether Attorney Colbert may represent both the best interest and legal interest of Child. If the orphans' court determines that no conflict exists between Child's dual interests, then the court shall re-enter the termination order as to Father. If the orphans' court determines that there is a conflict

between Child's best interest and legal interest, then the court shall appoint separate legal counsel and conduct a new involuntary termination hearing as to Father to provide legal counsel an opportunity to advocate on behalf of Child's legal interests pursuant to *K.M.G.*, 240 A.3d at 1235.

Order vacated. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 05/20/2022