J-A18005-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: K.P.F. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: K.F. AND D.F. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 310 WDA 2023 |

Appeal from the Order Entered February 13, 2023
In the Court of Common Pleas of Blair County Orphans' Court at No(s):
No. 2021 Adoption 32

| | | |
|---|---|---|
| IN RE: ADOPTION OF L.T.B. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: K.F. AND D. F. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 311 WDA 2023 |

Appeal from the Order Entered February 13, 2023
In the Court of Common Pleas of Blair County Orphans' Court at No(s):
No. 2021 Adoption 32A

BEFORE:  BENDER, P.J.E., LAZARUS, J., and KUNSELMAN, J.

MEMORANDUM BY BENDER, P.J.E.:               **FILED: OCTOBER 23, 2023**

Appellants, K.F. and D.F., appeal at docket number 310 WDA 2023 from the orphans' court's order denying their petition for involuntary termination of the parental rights of Appellee, A.B. ("Mother"), to minor, K.P.F., born in

September of 2014.[1]  In addition, Appellants appeal at docket number 311 WDA 2023 from the orphans' court's order denying their petition for involuntary termination of the parental rights of Mother to minor, L.T.B., born in August of 2010.[2, 3]  Because it is unclear whether Children were appointed appropriate counsel to represent their legal interests during the involuntary termination proceedings, we are constrained to vacate the orphans' court orders and remand for further proceedings.

We need not delve deeply into the underlying facts given our disposition. Instead, we focus our attention on the procedural history of this matter, which the orphans' court summarized as follows:

> The interests of the [C]hildren were initially addressed by Blair County Children, Youth and Families.  An application for emergency protective custody was filed on behalf of [L.T.B.] on September 20, 2019.  The petition alleged abuse and/or neglect[,] and that the child was without proper care or control.  An application for emergency protective custody was filed on behalf of [K.P.F.] on September 20, 2019.  The petition alleged abuse and/or neglect[,] and that the child was without proper care or control.  On September 20, 2019, shelter[]care applications were

---

[1] As discussed *infra*, the orphans' court also denied Appellants' petition for involuntary termination of the parental rights to K.P.F. of Appellee, N.F. ("K.P.F.'s Father").  K.P.F.'s Father had agreed to consent to the relinquishment of his parental rights to K.P.F., provided that Mother's rights were terminated.  N.T., 10/18/22, at 2-3.  By way of background, Appellant, K.F., is K.P.F.'s Father's father, *i.e.*, K.P.F.'s grandfather.  Appellant, D.F., is K.F.'s wife.

[2] The biological father of L.T.B. is unknown.  Orphans' Court Opinion ("OCO"), 2/13/23, at 1.  However, K.P.F.'s Father "was in the role of father for" L.T.B. *Id.* at 6.  *See also id.* at 17 (noting that K.P.F.'s Father "has been the father role to [L.T.B.] since [L.T.B.] was four years old").

[3] We collectively refer to L.T.B. and K.P.F. herein as "Children."

filed on behalf of the named [C]hildren. The applications stated that the [C]hildren were in the protective custody[,] as of September 18, 2019[,] of [Appellants] at [Appellants' home address]. The shelter[]care order docket number CP7-DP-00017-2019 provided that sufficient evidence was presented to prove that continuance or return of the [C]hildren to the home of [Mother], [K.P.F's Father], and[/]or maternal grandmother, [M.B. ("Maternal Grandmother"),] was not in the best interest[s] of the [C]hildren.

By correspondence dated September 9, 2019, counsel for [Appellants] communicated with Blair County Children, Youth and Families and requested the placement of the subject [C]hildren with them in their home. A Permanency Review Order and Permanency Review Plan was entered on October 23, 2019[,] for the subject minor [C]hildren which provided that:

> Reasonable efforts have been made by the county children and youth services agency to finalize the [C]hildren's permanency plan in that the goal of return home has been ruled out, and [Children] have been placed with [Appellants] who are permanent legal custodians (relative) for the [C]hildren. Services have been offered to the parents, grandparents, and the children. The parties have agreed to a goal of permanent legal custodianship (relative) and a custody order is being entered consistent with the agreement of the parties.

Orders for termination of court supervision were entered on October 23, 2019, which provided that [C]hildren had been placed in the custody of a permanent legal custodian. The [C]hildren had been placed in the physical and legal custody of a fit and willing relative[,] and services from the county agency were no longer needed. By Order of Court dated October 23, 2019, physical and legal custody of the [C]hildren … were vested in [Appellants]. [Appellants] were identified as the paternal grandparents of [K.P.F]. The father of [L.T.B.] was reported as unknown. The custody order further provided that [Mother] was permitted to have fully supervised visits with [Children] as mutually arranged with [Appellants]. The periods of visitation were to occur in [Appellants'] home or another location approved by [Appellants]. [K.P.F.'s Father] was permitted to have fully supervised visits as mutually arranged with [Appellants]. The periods of visitation were to occur in [Appellants'] home or another location approved by [Appellants].

The Petitions for Involuntary Termination of Parental Rights in the above matters were filed [by Appellants] on November 18, 2021. A Consent to Accept Custody of [Children] was filed by [K.F.] on October 26, 2021. A Consent to Accept Custody of [Children] was filed by [D.F.] on October 26, 2021. On November 3, 2021, Maryann Joyce Bistline, Esquire was appointed as counsel for [Children].[4] A Report of Intention to Adopt was filed on behalf of [Appellants] on November 18, 2021. A preplacement investigation was conducted in connection with the permanency plan placement of the minor [C]hildren through Blair County Children and Youth docketed at CP7-DP-0016-2019. The matter was scheduled for a hearing on February 2, 2022[,] and subsequently continued on April 4, 2022[,] followed by a continuance to May 16, 2022.

By Order of Court dated July 5, 2022, Mark. S. Zearfaus, Esquire[,] was appointed to represent [K.P.F.'s Father]. Traci L. Naugle, Esquire[,] was appointed to represent [Mother]. The hearing on the Petition for Involuntary Termination of Parental Rights was scheduled for August 9, 2022. The matter was continued to October 6, 2022[,] and subsequently rescheduled to October 18, 2022.

A hearing on the Petition for Termination of Parental Rights was held on October 18, 2022. [K.F.] was subject to direct and cross examination. [D.F.] was subject to direct and cross examination. The [C]hildren were interviewed on December 14, 2022. The second day of the hearing was held on December 22, 2022. [Mother] was subject to direct and cross examination. [Maternal Grandmother] was subject t[o] direct and cross examination. [K.P.F.'s Father] was subject to direct examination. The third day of the hearing was held February 8, 2023. [K.P.F.'s Father] was subject to cross examination. [D.F.] was subject to continued direct and cross examination.

OCO at 1-6 (internal citations omitted).

_____

[4] There is no entry of a November 3, 2021 order on either orphans' court docket. However, as will be discussed *infra*, the orphans' court entered orders on January 18, 2022, in which it appointed Attorney Bistline as guardian ad litem for Children.

As mentioned *supra*, on February 13, 2023, the orphans' court entered an opinion and order at each orphans' court's docket, wherein it denied Appellants' petitions for involuntary termination of parental rights of Mother to K.P.F. and L.T.B., as well as K.P.F.'s Father to K.P.F. Appellants then filed timely notices of appeal and concise statements pursuant to Pa.R.A.P. 1925(a)(2)(i) at each orphans' court's docket.[5] The orphans' court did not file a Rule 1925(a) opinion, but instead issued a letter stating that it was relying on its February 13, 2023 opinion and order.

Presently, Appellants raise six issues for our review:

I. Whether the [orphans'] court erred and/or grossly abused its discretion in finding that [Appellants] have failed to prove by clear and convincing evidence that their petition for involuntary termination of Mother's parental rights should be granted pursuant to 23 Pa.C.S.[] § 2511(a)(1)[,] as the evidence of record supports termination.

II. Whether the [orphans'] court erred and/or grossly abused its discretion in finding that [Appellants] have failed to prove by clear and convincing evidence that their petition for involuntary termination of Mother's parental rights should be granted pursuant to 23 Pa.C.S.[] § 2511(a)(2)[,] as the court failed to consider this section in [its] opinion and order, and the record supports termination.

III. Whether the [orphans'] court erred and/or grossly abused its discretion in both considering, and permitting evidence to be presented over objection, Mother's efforts to remedy the conditions described in the petition for involuntary termination when they were initiated subsequent to the notice of filing the petition.

IV. Whether the [orphans'] court erred and/or grossly abused its discretion in finding that while Mother did not provide essential

---

[5] We consolidated the appeals *sua sponte*.

parental care, control, or subsistence, the causes of incapacity can and will be remedied.

V. Whether the [orphans'] court erred and/or grossly abused its discretion in denying the petition for involuntary termination of Mother's parental rights due to finding a bond between the [C]hildren and Mother but failing to then consider:

> a. Whether the bond indicates a beneficial relationship that should be preserved;

> b. Whether the bond with [Appellants] is stronger than the bond with Mother;

> c. The substantial damage done to the [C]hildren by a prolonged, unhealthy, pathological bond with Mother as it affects [Appellants'] ability to provide the necessary love, care, and stability that the [C]hildren have needed;

> d. Whether termination was still appropriate when a bond was found as termination provides the [C]hildren with permanency necessary for the fulfillment of their potential in a permanent, healthy, safe environment.

VI. Whether the [orphans'] court erred and/or grossly abused its discretion in finding that a denial of the petition for involuntary termination of Mother's parental rights will allow the [C]hildren to remain in their home where they have formed a loving bond, and are provided a safe, stable, and structured environment when the denial prevents the same.

Appellants' Brief at 4-6 (unnecessary capitalization omitted).

Before delving into the merits of Appellants' issues, we must initially consider, *sua sponte*, whether Children were appointed legal counsel to represent their legal interests pursuant to 23 Pa.C.S. § 2313(a). Section 2313(a) provides that:

> **(a) Child.--**The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian ad litem to represent any child who has not reached the age of 18 years and is subject to any other

- 6 -

proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S. § 2313(a).

Our Supreme Court "has interpreted this section as requiring that the common pleas court appoint an attorney to represent the child's legal interests, *i.e.*, the child's preferred outcome." ***In re Adoption of K.M.G.***, 240 A.3d 1218, 1235 (Pa. 2020) (cleaned up).[6] The Court has further instructed that "a single attorney cannot represent a child's best interests and legal interests if those interests conflict[,]" and "the orphans' court must determine whether counsel can represent the dual interests before appointing an individual to serve as [guardian ad litem]/[c]ounsel for a child." ***Id.*** at 1236. In addition, "the failure to appoint a separate attorney to represent the child's legal interests constitutes structural error, meaning it is not subject to a harmless-error analysis[,]" and the issue is "non-waivable, because the right belonged to the child who, given that he or she was unrepresented, could not have challenged the lack of counsel." ***Id.*** at 1235 (cleaned up). Accordingly,

---

[6] A child's legal interests are distinct from his or her best interests. ***See In re T.S.***, 192 A.3d 1080, 1082 n.2 (Pa. 2018) ("'Legal interests' denotes that an attorney is to express the child's wishes to the court regardless of whether the attorney agrees with the child's recommendation. 'Best interests' denotes that a guardian ad litem is to express what the guardian ad litem believes is best for the child's care, protection, safety, and wholesome physical and mental development regardless of whether the child agrees.") (citations omitted); ***In re Adoption of L.B.M.***, 161 A.3d 172, 174 (Pa. 2017) ("In cases involving children, the law acknowledges two separate and distinct categories of interest: a child's legal interests, which are synonymous with the child's preferred outcome, and a child's best interests, which the trial court must determine.") (footnotes omitted).

our Supreme Court has granted appellate courts *sua sponte* review to assess "(1) whether the orphans' court appointed counsel to represent the legal interests of the children and (2) if the appointed counsel also serves as [guardian ad litem], whether the orphans' court determined that the child's best interests and legal interests did not conflict." *Id.* at 1236.

Here, it is unclear to us what role Attorney Bistline played in the proceedings below. On January 18, 2022, the orphans' court entered an order pertaining to K.P.F., which stated in relevant part:

> Maryann Bistline, Esquire is hereby appointed the Guardian Ad Litem for [K.P.F.] to represent his interest in the above captioned adoption action. Any fees due to the Guardian Ad Litem shall be paid at a rate of $ ____ per hour.

Order, 1/18/22 (blank space in original).[7]

Similarly, with respect to L.T.B, the court filed the following order on January 18, 2022, which provided in relevant part:

> Maryann Bistline, Esquire is hereby appointed the Guardian Ad Litem for [L.T.B.] to represent his interest in the above captioned adoption action. Any fees due to the Guardian Ad Litem shall be paid at a rate of $ ____ per hour.

_____

[7] Though not filed until January 18, 2022, this order was dated November 23, 2021, and pertains to the petition to terminate Mother's parental rights to K.P.F. A nearly identical order — filed on January 18, 2022 and mistakenly dated January 10, 2021 — also appears in the record and pertains to the petition to terminate K.P.F.'s Father's parental rights. It likewise appoints Attorney Bistline as K.P.F.'s guardian ad litem.

Order, 1/18/22 (blank space in original).[8]  Thus, although the orders do not specify what interests Attorney Bistline is to represent, she is identified in the appointment orders as Children's guardian ad litem, not specifically as their legal counsel.

Our review of the transcripts also reveals that Attorney Bistline was identified as Children's guardian ad litem during the proceedings.  *See* N.T., 10/18/22, at 1 (orphans' court's stating, "Present in the courtroom is Maryann Joyce Bistline.  She is guardian ad litem for the minor [C]hildren."); *id.* at 92 (orphans' court's conveying, "Attorney Bistline has been appointed as guardian ad litem for the [C]hildren.  So I would like her input on [whether the Children should be interviewed], if you don't mind placing it.  If you don't have input[,] that's fine[,] but I do ask for your input on the record as guardian ad litem for the [C]hildren and you may have to get near a microphone."); *id.* at 93 (orphans' court's saying that, with respect to the Children's interviews, "I would prefer that the attorneys are present and … I am agreeable to the attorneys asking the questions or talking to the [C]hildren, unless that is not preferred.  I'll leave that to the guardian ad litem.  Why don't we do it this way.  Why don't we have the attorneys provide areas of discussion and I will handle the direct communications with the [C]hildren, with the attorneys

_____

[8] This order was also dated November 23, 2021, and pertains to the petition to terminate Mother's parental rights to L.T.B.  There is another order — dated November 23 ,2021, and entered on January 18, 2022 — which pertains to L.T.B.'s unknown father and states that "Maryann Joyce Bistline, Esquire, is hereby appointed to represent the child listed in paragraph 6 of the petition[, *i.e.*, L.T.B.]".  Order, 1/18/22.

present but the attorneys can give me their areas that they would like me to address with the [C]hildren and they can be specific questions or areas, either way."), ***but see*** N.T., 12/22/22, at 1 ("And Counsel for the minor [C]hildren, Maryann Joyce Bistline[,] is in the courtroom."); N.T., 2/8/23, at 1 (orphans' court's stating, "Present in the courtroom, Maryanne Joyce Bistline, counsel for the minor [C]hildren."). Separate interviews of K.P.F. and L.T.B. took place on December 14, 2022, where both the orphans' court and Attorney Bistline asked them questions. ***See generally*** N.T., 12/14/22.

Based on the foregoing, we are unable to verify whether the orphans' court appointed counsel to represent K.P.F. and L.T.B.'s respective legal interests, as it appears from the face of the record that Attorney Bistline was appointed to be their guardian ad litem. Further, if Attorney Bistline was appointed to be Children's guardian ad litem ***and*** legal counsel, we are unable to find anything in the record showing that the orphans' court determined that Children's best interests and legal interests did not conflict. ***See In re Adoption of K.M.G.***, ***supra***.

As a result, we are compelled to vacate the orphans' court's orders and remand for further proceedings. On remand, the orphans' court must determine whether, pursuant to Section 2313(a), Attorney Bistline is able to represent, without conflict, both the best interests and legal interests of each child. If the orphans' court ascertains that no conflict exists between each child's best interests and legal interests, then the court shall re-enter its order denying Appellants' petitions for involuntary termination of parental rights at

each orphans' court docket.[9, 10]  However, if the court concludes that there is a conflict between K.P.F.'s legal and best interests or L.T.B.'s legal and best interests, then the court shall appoint separate legal counsel for that child and conduct a new termination hearing so that legal counsel has an opportunity to advocate for that child's legal interests.  *See Interest of A.J.R.O.*, 270 A.3d at 571 (giving similar remand instructions).

Orders vacated.  Cases remanded.  Jurisdiction relinquished.

_____

[9] Such an order would constitute a new, final, appealable order to this Court. *See Interest of A.J.R.O.*, 270 A.3d 563, 571 n.11 (Pa. Super. 2022) (citing *In re H.S.W.C.-B.*, 836 A.2d 908, 911 (Pa. 2003) (holding that "an order terminating or preserving parental rights ... shall be deemed final when entered")).

[10] We also ask the orphans' court to ensure that it has adequately addressed the errors raised by Appellants in their concise statements.  *See* Pa.R.A.P. 1925(a)(1) (providing that "the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall within the period set forth in Pa.R.A.P. 1931(a)(1) file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of, or shall specify in writing the place in the record where such reasons may be found"); *Commonwealth v. Widger*, 237 A.3d 1151, 1158 n.5 (Pa. Super. 2020) ("It is incumbent upon a trial court to provide this Court with its Rule 1925(a) opinion addressing an appellant's issues, with citation to the record, to permit a meaningful and effective review of the issues raised and efficient use of judicial resources."); *see also* Appellants' Brief at 21-22 (claiming that the orphans' court did not analyze termination under Section 2511(a)(2) in its February 13, 2023 opinion); Mother's Brief at 7 (acknowledging that the orphans' court's opinion "does not specifically state that the … court found that there was not sufficient evidence to terminate Mother's parental rights under [S]ection 2511(a)(2)").

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>10/23/2023</u>