J-S22016-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: M.D.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: O.B.N., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 373 WDA 2024 |

Appeal from the Order Entered March 26, 2024
In the Court of Common Pleas of Armstrong County Orphans' Court at
No(s):  004-ADOPT-2024

| | | |
|---|---|---|
| IN RE: ADOPTION OF: A.H.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: O.B.N., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 374 WDA 2024 |

Appeal from the Order Entered March 26, 2024
In the Court of Common Pleas of Armstrong County Orphans' Court at
No(s):  005-ADOPT-2024

| IN RE: ADOPTION OF: D.S.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: O.B.N., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 375 WDA 2024 |

Appeal from the Order Entered March 26, 2024
In the Court of Common Pleas of Armstrong County Orphans' Court at
No(s):  006-ADOPT-2024

| IN RE: ADOPTION OF: B.J.N., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| APPEAL OF: O.B.N., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 376 WDA 2024 |

Appeal from the Order Entered March 26, 2024
In the Court of Common Pleas of Armstrong County Orphans' Court at
No(s):  007-ADOPT-2024

BEFORE:  PANELLA, P.J.E., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY LANE, J.:                    **FILED: August 12, 2024**

O.B.N. ("Mother") appeals from the March 26, 2024 decrees involuntarily terminating her parental rights to her three sons: M.D.H., born in May of 2018; A.H.H., born in January of 2016; D.S.H., born in November

- 2 -

of 2014; and to her daughter, B.J.N., born in April of 2013 (collectively, "the

Children").[1]  We affirm.

The orphans' court set forth the relevant facts and procedural history,

as follows:

> Armstrong County Children, Youth, and Family Services
> ("CYS") had received multiple reports of physical abuse of the
> [C]hildren by Mother.  In February 2022, Mother hit [M.D.H.] . . .
> several times on the head, causing injury.  She was arrested and
> charged with aggravated assault,[2] among other things, and the
> [C]hildren were all removed from her care by [a protective
> custody order dated February 24, 2022].
>
> After many continuances, Mother pleaded guilty to
> aggravated assault on January 3, 2024.  She is now serving a 6-
> 36 month sentence in the Armstrong County Jail.[3]
>
> While the charges were still pending, CYS developed a
> permanency plan [for reunification] which included Mother

_____

[1] On March 26, 2024, the orphans' court involuntarily terminated the parental rights of S.E.H., the natural father of A.H.H., D.S.H., and B.J.N.  S.E.H. did not file a notice of appeal.  On the same date, the court involuntarily terminated the parental rights of any unknown father of the youngest child, M.D.H., and none filed an appeal.

[2] Mother was charged with, *inter alia*, aggravated assault — for incidences occurring "on or about December 1, 2021 through February 9, 2022[.]"  CYS Exhibit 5 (at 373 WDA 2024) (citing 18 Pa.C.S.A. § 2702(a)(8)).  This specific subsection provides that "[a] person is guilty of aggravated assault if he . . . attempts to cause or intentionally, knowingly or recklessly causes bodily injury to a child less than six years of age, by a person 18 years of age or older. . . ."  18 Pa.C.S.A. § 2702(a)(8).

[3] As a result of Mother's guilty plea, the juvenile court found on February 5, 2024, that aggravated circumstances existed as to Mother with respect to the Children and ordered that no further reunification efforts were necessary.  **See** CYS Exhibit 4; **see also** 42 Pa.C.S.A. § 6302 (defining aggravated circumstances). In addition, in the same order, the court suspended Mother's supervised visitation with the Children.  **See** CYS Exhibit 4.

completing parenting classes, having a mental health evaluation, and securing safe, appropriate housing. The first component was the parenting classes, which took place at an agency called A.C.E.S. in Vandergrift, Pennsylvania. Essentially, this consisted of supervised visitation with the [C]hildren, followed by meetings and discussions between Mother and the agency representative. Mother's participation at A.C.E.S. was hampered by occasional lack of transportation to Vandergrift. However, Mother never asked CYS for assistance with transportation despite having been told that CYS could help if necessary.

When Mother did attend A.C.E.S., the supervisor noted a lack of empathy with the [C]hildren. She struggled with positive discipline and time management.

The second component of the permanency plan was for Mother to undergo a mental health evaluation and follow through with any recommended treatment. This service was performed by Family Psychological Services, which reported very sporadic attendance by Mother. Although she was never formally discharged from mental health services, her compliance with this component of the permanency plan was deemed minimal.

The third component of the permanency plan was for Mother to obtain safe, appropriate housing for her family. About 17 months after the Children were placed, Mother moved from her trailer to a one-bedroom studio apartment. This is not satisfactory housing for a family of five.

Orphans' Court Opinion, 4/15/24, at 1-3 (unnecessary capitalization omitted);

*see also* N.T., 3/22/24, at 12-24.

On January 24, 2024, CYS filed separate petitions for the involuntary termination of Mother's parental rights to the Children pursuant to 23 Pa.C.S.A. § 2511(a)(1), (8), (9), and (b). The orphans' court conducted an evidentiary hearing on March 22, 2024, during which the Children were represented by their guardian *ad litem* ("GAL") who had been appointed for

them in the underlying dependency proceedings.[4]   CYS presented the

testimony of its caseworker, Diane Whitaker, and psychologist, Carolyn Menta,

Psy.D., who performed a psychological evaluation as well as a parenting

capacity evaluation approximately one year later of Mother.   In defense of the

petitions, Mother, who was then incarcerated, read a letter on the record in

---

[4] Our Supreme Court has held that "appellate courts should engage in *sua sponte* review to determine if orphans' courts have appointed counsel to represent the legal interests of children in contested termination proceedings, in conformity with" 23 Pa.C.S.A. § 2313(a).  ***In re Adoption of K.M.G.***, 240 A.3d 1218, 1235 (Pa. 2020).  Further, if the appointed counsel also serves as GAL, "appellate courts should review *sua sponte* whether the orphans' court made a determination" that the child's legal interests and best interests "did not conflict."  ***Id***.  These findings by the orphans' court must typically be conducted ***before*** counsel's appointment and should appear within the orders appointing counsel.  ***See id***. at 1236 (explaining that "[b]oth inquiries involve a yes or no answer that can be addressed by a review of the orphans' court order (or lack thereof) appointing counsel to represent a child under Section 2313(a)").

Our review of the certified record in this case reveals that the orphans' court did not issue orders appointing counsel to represent the Children's legal interests in the involuntary termination matter.  However, the GAL appeared at the relevant proceeding to represent the Children.  The court determined on the record, prior to the presentation of any evidence, that the GAL was able to represent the Children's dual interests without conflict.  ***See*** N.T., 3/22/23, at 5-6.  Under these circumstances, we need not vacate the decrees. Nevertheless, we caution the court against failing to comply with the High Court's mandate to issue a separate order appointing counsel to represent the legal interests of a child involved in an involuntary termination matter and, if the appointed counsel also serves as GAL, to determine "***prior to appointment***" whether the child's dual interests did not conflict.  ***Id***. at 1236 (emphasis added); ***see***, ***e.g.***, ***Interest of A.J.R.O.***, 270 A.3d 563 (Pa. Super. 2022) (vacating involuntary termination decree because the orphans' court failed to determine whether the child's legal interests and best interests conflicted prior to appointing a single attorney to represent both; and remanding to allow the common pleas court to make the required determination).

open court that she had allegedly written. Mother did not testify under direct or cross-examination.

Following the hearing, by decrees dated and docketed on March 26, 2024, the orphans' court involuntarily terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(8), (9), and (b). Mother timely filed separate notices of appeal and concise statements of errors complained of an appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), which this Court consolidated *sua sponte.* The orphans' court thereafter filed its Rule 1925(a) opinion.

On appeal, Mother raises the following issues for review:

I.      Did the [orphans'] court abuse its discretion and err as a matter of law as [CYS] failed to present clear and convincing evidence supporting termination of parental rights?

II.     Did the [orphans'] court err in determining it is in the Child[ren]'s best interest to terminate Mother's parental rights?

Mother's Brief at 7.[5]

Our Supreme Court has explained that we must review the decrees for an abuse of discretion:

This standard of review [. . .] requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but it does not require the appellate court to accept the lower court's inferences or conclusions of law. ***See In re Adoption of S.P.***, 47 A.3d 817, 826 (Pa. 2012). That is, if the factual findings are supported, we

---

[5] The GAL has filed a responsive brief advocating for the decrees involuntarily terminating Mother's parental rights to the Children.

must determine whether the trial court made an error of law or abused its discretion. **See** [**id**.]  An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion; we reverse for an abuse of discretion "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill will." **Id**.  Thus, absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. **See id**. at 821. [. . .] "We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence." [**Id**.] (internal citation and quotation omitted).

**In re Adoption of C.M.**, 255 A.3d 343, 358-59 (Pa. 2021) (some citations omitted).

The involuntary termination of parental rights is governed by section 2511 of Pennsylvania's Adoption Act ("Act"), 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

Our case law has made clear that under section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

**In re B.J.Z.**, 207 A.3d 914, 921 (Pa. Super. 2019) (citation and unnecessary capitalization omitted).

- 7 -

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted statutory grounds for seeking the termination of parental rights are valid. *See In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). We need only agree with the orphans' court as to any one subsection of section 2511(a), as well as section 2511(b), to affirm. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

Thus, we analyze the involuntary termination decrees in this case pursuant to section 2511(a)(9) and (b), which provides as follows.[6]

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * * *
>
> (9) The parent has been convicted of one of the following in which the victim was a child of the parent:
>
> * * * *
>
> (ii) a felony under 18 Pa.C.S.[A.] § 2702 (relating to aggravated assault)[.]
>
> * * * *
>
> **(b) Other considerations**.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant

---

[6] Given our disposition regarding section 2511(a)(9), we need not review Mother's argument in her brief regarding section 2511(a)(8). *See In re B.L.W.*, 843 A.2d at 384.

to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(9), (b).

Initially, we review the decrees pursuant to section 2511(a)(9). With respect to this subsection, this Court has explained that it "**only requires the petitioner to introduce proof of the parent's conviction**, not proof of the facts underlying the parent's guilt." **Interest of M.E**, 283 A.3d 820, 831 (Pa. Super. 2022) (emphasis added).

The orphans' court found that "Mother has been convicted of a felony under 18 Pa.C.S.A. § 2702[,] in which the victim was a child of Mother." Decree, 3/26/24, at 2, ¶ 6. The record in M.D.H.'s case, docketed at 373 WDA 2024, confirms that Mother pleaded guilty to aggravated assault of a victim less than six years old in connection with incidences occurring "on or about December 1, 2021 through February 9, 2022[.]" CYS Exhibit 5 (at 373 WDA 2024) (citing 18 Pa.C.S.A. § 2702(a)(8)). Indeed, Mother acknowledges that she pleaded guilty to this crime with respect to allegations that she assaulted her own child.[7] Mother's Brief at 19.

Mother's challenge, however, suggests that section 2511(a)(9) is not an appropriate basis for termination. Specifically, she argues in her first issue on

---

[7] It is of no consequence to the applicability of section 2511(a)(9) that Mother asserts her victim was A.H.H., whereas DHS asserts that it was M.D.H., since they are both her sons.

appeal that the court abused its discretion in terminating her parental rights under this subsection because our caselaw is "scant" regarding its application and what does exist "seem[s] to indicate that while convictions for certain offenses are concerning, they are not alone enough to terminate parental rights. . . ." *Id*. at 20. Specifically, she relies upon *In re Involuntary Termination of Parental Rights: Harry Alfred Jones, et al.*, 297 A.2d 117 (Pa. 1972), and *In re R.M.G.*, 997 A.2d 339 (Pa. Super. 2010).

With respect to *Harry Alfred Jones, et al.*, our High Court vacated the order involuntarily terminating the mother's parental rights under the Adoption Act of 1970, 1 P.S. § 311(2), and remanded the case. The allegation by the child welfare agency involved the mother's repeated and continued abuse under a statutory provision now codified at 23 Pa.C.S.A. § 2511(a)(2). The Court held, "The evidence proffered in support of termination includes appellant's guilty plea to the charge of accessory to rape of one of her own daughters. Though the single act is egregiously offensive, it does not, in itself, meet the statutory standard of continued abuse necessary to support involuntary termination." *Harry Alfred Jones, et al.*, 297 A.2d at 119. Based on this holding, Mother asserts that the mother's conviction for "aiding and abetting another in raping one of her children . . . [was] not enough to terminate parental rights." Mother's Brief at 19. To the extent that Mother argues her conviction of a felony under 18 Pa.C.S.A. § 2702 in which the victim was her child is likewise not enough to terminate her parental rights under

section 2511(a)(9), her claim is disingenuous. Indeed, the holding in **Harry Alfred Jones, et al.** is inapplicable because: (1) it involved section 2511(a)(2), which provided a different basis for involuntary termination; and (2) a prior codification of section 2511(a)(9) did not exist in the Act governing the termination of the mother's parental rights in that case.

Likewise, Mother's reliance upon **In re R.M.G.** is unavailing. In that case, this Court reversed the orders denying the child protective agency's petitions for goal change and for the involuntary termination of the mother's parental rights pursuant to section 2511(a)(9) and (b). The mother had been convicted of aggravated assault of her first child, who was not a subject of the appeal, under 18 Pa.C.S.A. 2702(a)(1). In reversing the termination order and remanding the case, the panel did not analyze section 2511(a)(9) because the parties had stipulated that it was satisfied. Therefore, we analyzed the order under only section 2511(b). **See R.M.G.**, 997 A.2d at 349. In this case, it follows that Mother's sole argument regarding **R.M.G.** is unsupported, *i.e.*, that the panel "did not fault the trial court for not terminating based on the aggravated assault conviction but rather found termination was warranted based on that mother failing to meet various goals." **See** Mother's Brief at 19. Thus, Mother has failed to provide controlling authority in support of her threshold contention that the court abused its discretion in terminating her parental rights under section 2511(a)(9). Because the evidence supports

termination under section 2511(a)(9), Mother's first issue merits no relief. *See In re M.E.*, 283 A.3d at 831.

In her second issue, Mother challenges the decrees with respect to section 2511(b), which mandates that the "primary consideration" for a court in considering an involuntary termination petition be to the child's "developmental, physical and emotional needs and welfare." *In the Interest of K.T.*, 296 A.3d 1085, 1105 (Pa. 2023) (quotation marks omitted); *see also* 23 Pa.C.S.A. § 2511(b). This Court has repeatedly stated that "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *In re C.W.U., Jr.*, 33 A.3d 1, 6 (Pa. Super. 2011) (citation omitted). The child's bond with the parent, "plus permanency, stability and all 'intangible' factors may contribute equally to the determination of a child's specific developmental, physical, and emotional needs and welfare, and thus are all of 'primary' importance in the section 2511(b) analysis." *K.T.*, 296 A.3d at 1109 (unnecessary capitalization omitted). The High Court emphasized:

> Moreover, the court must consider whether, in the context of all these factors, the parental bond is "necessary and beneficial" to the child. *See* [*In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)] (courts "must examine the status of the bond to determine whether its termination would destroy existing, necessary and beneficial relationship") (quotation marks omitted). *See also Int. of M.E.*, 283 A.3d 820, 836–37 ([Pa. Super.] 2022) (To the extent there is a bond, the trial court must examine whether termination of parental rights will destroy a "necessary and beneficial relationship[.]")

*Id*.

Pennsylvania law is well-settled that trial courts are "under no obligation to order a bonding evaluation before terminating" parental rights. *See Interest of D.R.-W.*, 227 A.3d 905, 915 n.7 (Pa. Super. 2020) (citing *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (citations omitted) (holding that "[w]hen conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well").

Mother asserts that "critically lacking in this case is evidence from any licensed professional regarding the strength of the bond between [M]other and the [C]hildren and the effect that termination of the bond would have on the [C]hild[ren]." Mother's Brief at 21. Mother relies upon *In re C.P.*, 901 A.2d 516 (Pa. Super. 2006), wherein the trial court ordered a bonding evaluation, but the licensed psychologist who performed it failed to assess the child's bond with the mother and recommended involuntary termination based solely on the mother's incapacity to parent. The *C.P.* Court concluded that the trial court failed to give primary consideration to the child's needs and welfare as required pursuant to section 2511(b) in terminating the mother's parental rights. As such, this Court reversed the involuntary termination order and remanded the case for the parties to present further testimony on the parent-child bond, if any, and the effect that termination of parental rights would have on the child.

In contrast, in this case, the orphans' court did not order a bonding evaluation and concluded that terminating Mother's parental rights "would

best serve" the Children's developmental, physical, and emotional needs and welfare. Decrees, 3/26/24, at 2. The court found that there is no longer a bond between the Children and Mother inasmuch as they have been in placement for more than two years and have lived together in a pre-adoptive foster home for nearly sixteen months. *See id.* at 2-3. The record amply supports the court's findings. Indeed, there is no evidence in the certified record that the Children possess a "necessary and beneficial" relationship with Mother.

For example, and as noted above, by order dated February 5, 2024, the juvenile court found that aggravated circumstances exist as to Mother, reunification efforts were no longer necessary, and it suspended Mother's supervised visitation with the Children. On cross examination by the GAL, the CYS caseworker, Ms. Whitaker, testified as follows.

Q. Have there been any changes in any of the [Children] since they found out that the visits were not going to . . . start up again?

A. Yes, there have been.

* * * *

A. Yes. There have been some positive changes. [M.D.H.] is doing much better focusing in school. He has now been able to sit and write his letters and sit and do them without having to be prompted, you know, "That is not correct. Try again," and his numbers. [A.H.H.] has been more focused. He is able to focus more during the school day. [B.J.N.]'s teachers have said that her memory recall has greatly increased and that her science grade went from a D up to a C. She had been really struggling with science. The teachers have seen marked improvements with all of her learning support. [D.S.H.] has done well in school, so he continues to do well.

Q. Any other changes with [A.H.H.] . . . at home?

A. He is more focused at home. He was having some issues at night where he was like wetting the bed and he has been dry. That has stopped.

Q. Since that time?

A. Yes.

N.T., 3/22/24, at 48-49.[8] In addition, Ms. Whitaker testified that the Children "want to be adopted." *Id*. at 49. She explained that they call their foster parents "mom and dad," and "[f]or months they haven't really brought [Mother] up. [D.S.H.] has asked if I knew when the adoption date was and I said, "I do not. I don't have that information." *Id*. at 36, 49.

Finally, in determining the Children's needs and welfare, the orphans' court credited the testimony of Dr. Menta and aptly summarized her testimony as follows in its Rule 1925(a) opinion.

> CYS arranged for Mother to be evaluated by Dr. Carolyn Menta, Psy.D. The psychological evaluation occurred in April 2022, not long after the [C]hildren were placed. Dr. Menta reported that Mother was physically abused by her aunt. Mother's behaviors are suggestive of bi-polar disorder with psychotic episodes during her manic phase. Dr. Menta recommended a full psychiatric evaluation and supervised visitation with the [C]hildren due to Mother's drastic mood swings, psychosis, poor impulse control and what appeared to be a lack of empathy toward her [C]hildren.

_____

[8] Ms. Whitaker testified that M.D.H. and B.J.N., then in kindergarten and fifth grade, respectively, "struggle academically." *See* N.T., 3/22/24, at 29, 34-35. However, A.H.H. and D.S.H., then in second grade and fourth grade, do "very well" in school. *Id*. at 31, 33.

Dr. Menta performed a parental capacity evaluation on Mother in July 2023. At that time, Dr. Menta found Mother to be paranoid, still suffering from mood swings, and in generally poor mental health. Mother also reported that she was regularly using marijuana. Dr. Menta testified that marijuana use can "greatly exacerbate" Mother's psychosis.

***Dr. Menta administered a "child abuse potential" evaluation. Mother scored more than double what would be considered a "clinically significant" score.*** Dr. Menta testified that this is a "big red flag" for future child abuse. Dr. Menta testified that Mother's lack of empathy is "pervasive" and not just evident in a single incident of physical abuse. Mother is much more focused on how this process is unfair to her, but does not seem to show any empathy for what did the [C]hildren have gone through. . . . [9]

Orphans' Court Opinion, 4/15/24, at 4-5 (emphasis and footnote added); ***see also*** N.T., 3/22/24, at 54-65. Dr. Menta performed Mother's parenting capacity evaluation approximately fifteen months after her psychological evaluation. With respect to whether Mother had developed greater "empathy" for the Children, Dr. Menta testified on inquiry by the orphans' court:

THE COURT: You testified that [Mother] had developed, to some degree, more empathy for the [C]hildren during the parental capacity evaluation but it was inconsistent and it was not what you would have expected?

[A]: [Mother] had reported to me that she got feedback from [her caseworker] at ACES that she was improving with empathy, but then she said, "Sometimes I do have it." It was inconsistent. In talking with [the caseworker] at ACES, she had reflected that to

_____

[9] Dr. Menta described "empathy" in this context as "really more [Mother's] ability to be able to see things from [the C]hildren's perspective and to understand how her own behavior impacts them. In this situation she was very focused on how the situation was unfair to her and how she felt. She was much less focused on how [the C]hildren were feeling and [how] it was impacting them." N.T., 3/22/24, at 69.

- 16 -

me as well, that there was slight improvement but we were still seeing a lot of the same behaviors.

N.T., 3/22/24, at 73. Based on Dr. Menta's testimony, we discern no abuse of discretion by the orphans' court in concluding that terminating Mother's parental rights will serve the developmental, physical, and emotional needs and welfare of the Children pursuant to section 2511(b). Thus, we affirm the decrees involuntarily terminating Mother's parental rights to the Children.

Decrees affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 08/12/2024