J-S12029-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: Z.N.L., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.M.H., MOTHER | : : : : : : : : : | |
| | : | No. 32 EDA 2026 |

Appeal from the Decree Entered December 2, 2025
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  2025-A0088

BEFORE:   McLAUGHLIN, J., SULLIVAN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY SULLIVAN, J.:                          **FILED MAY 1, 2026**

J.M.H. ("Mother") appeals from the December 2, 2025 decree involuntarily terminating her parental rights to her son, Z.N.L. ("Child"), born in March 2022.[1]  Following our review, we are constrained to vacate and remand.

Given our disposition, we need not detail the full factual and procedural history of this case.  Briefly, Mother and Child came to the attention of the Montgomery County Office of Children and Youth ("OCY") in 2022, due to

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] By separate decree entered on the same date, the Orphans' Court involuntarily terminated the parental rights of Child's father, N.P.L. ("Father"). Father had not appealed the Orphans' Court decision or participated in this appeal.

concerns related to homelessness and inadequate parenting. *See* N.T., 12/2/25, at 69. At the time, Mother and Father were both minors. OCY obtained custody of Mother in October 2022, and Child was placed with the Father's guardian under a safety plan. *See id*. OCY obtained custody of Child in March 2023, and the juvenile court adjudicated Child dependent the same month. *See id*. at 71-72; *see also* OCY Exhibit 3. OCY placed Child and Mother together in a mother-baby program. *See* N.T., 12/2/25, at 72.

Child remained placed with Mother in the aforementioned program until September 2023, when Mother absconded with him. *See id*. The following month, Mother and Child were located and placed together in a temporary foster home. *See id*. at 72-73. Mother again absconded two weeks later, this time without Child. *See id*. at 73. Ultimately, Mother and Child were placed together again in a foster home in April 2024. *See id*. at 73-74.

In August 2024, Mother transitioned to an independent living apartment with Child, still under supervision of OCY, at which time the juvenile court returned physical and legal custody of Child to Mother. *See id.* at 74; *see also* OCY Exhibit 3. Thereafter, OCY developed concerns related to, *inter alia*, Mother's finances, Mother's substance abuse, and domestic violence involving Mother and her boyfriend. *See id*. at 75. Additionally, OCY received reports alleging substance abuse by Mother and that Child was left home alone while Mother went to work. *See id.* at 76, 79, 97. OCY ultimately obtained emergency protective custody of Child in January 2025, and returned Child to

foster care, where he remained at the time of the subject proceedings. **See** **id**. at 98-100, 104-06.

The juvenile court recognized Child's permanency goal as reunification with a concurrent goal of adoption. **See** OCY Exhibit 3. In furtherance thereof, OCY maintained a family service plan with objectives focused on, *inter alia*, housing, substance abuse, and parenting. **See** OCY Exhibit 4; **see also** N.T., 12/2/25, at 76. At a permanency review hearing in April 2024, which Mother failed to attend, the court found Mother had not complied with the permanency plan and made no progress toward alleviating the circumstances which necessitated Child's original placement. **See** OCY Exhibit 3. Thereafter, in May 2025, at the request of Child's guardian *ad litem* ("GAL"), the court suspended communication between Child and Mother. **See id**.

On July 2, 2025, OCY filed a petition to involuntarily terminate Mother's parental rights to Child, then less than three-and-one-half years old, pursuant to section 2511(a)(1), (2), (5), and (b).[2] The Orphans' Court appointed Janine D'Aniello Martin, Esquire ("Attorney Martin"), of the Montgomery County Advocacy Project ("MCAP"), Child's GAL in the parallel dependency proceedings, "as counsel to represent the legal interests" of Child on July 15, 2025. Order, 7/15/25. The order did not include any conflict determination. **See id.**

---

[2] **See** 23 Pa.C.S.A. § 2511(a)(1), (2), (5); **id**., § 2511(b).

- 3 -

On December 2, 2025, the court conducted an evidentiary hearing, at which time Child was then more than three and one-half years old. At the beginning of the hearing, the following exchange occurred:

> THE COURT: Before we get started -- I'm going to allow counsel to call witnesses on the permanency review – [Attorney] Martin, can you just address the legal interest, best interest of the child?
>
> MS. MARTIN: Sure, Your Honor. It's my position as legal interest and best interest counsel, I am in agreement with OCY's position and granting the involuntary or voluntary [termination of parental rights] and continuing permanency with the foster family.
>
> THE COURT: And you didn't see there was any conflict between the best interest and legal interest?
>
> MS. MARTIN: Not here, Your Honor.
>
> * * * * *
>
> THE COURT: I'm just going to make a finding on the record that counsel for the minor child was appointed. Counsel understands the difference between legal counsel and best interest counsel. Counsel for the minor articulated that no conflict exists between representing the minor's legal interest and best interest. Therefore, this [c]ourt finds no conflict exists between counsel's representation of the legal interest and best interest of the minor child in the proceeding today.

N.T., 12/2/25, at 7-8.

Based on the foregoing, the court permitted Attorney Martin to represent Child's bests interests and legal interests at the subject hearing. Mother was represented by counsel and participated via Zoom.[3] OCY

---

[3] Shortly after OCY began its case-in-chief with respect to the termination of Mother's parental rights, Mother ceased participation in the hearing. *See* N.T.,

*(Footnote Continued Next Page)*

- 4 -

presented the testimony of its caseworkers, Anastasia Devlin Anderson and Jamie Lowery, as well as numerous pieces of documentary evidence, including Child's dependency records. Mother did not testify or present any evidence.

By decree dated and entered on December 2, 2025, the Orphans' Court involuntarily terminated Mother's parental rights to Child pursuant to section 2511(a)(1), (2), (5), and (b). On December 30, 2025, Mother timely filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). Thereafter, the Orphans' Court filed a responsive Rule 1925(a) opinion, which referred to its reasoning placed on the record at the conclusion of the evidentiary hearing.

On appeal, Mother raises the following issues for our review:

A. Did the [Orphans' Court] commit an error of law and/or abuse its discretion when it held that [OCY] had proven by "clear and convincing evidence" that [Mother's] parental rights should be terminated pursuant to 23 Pa.C.S.A. section 2511(a)(1), [(2), and (5)] where [Mother] had made, and was making, substantial progress on her Family Services Plan(s) goals as proven by the testimony and evidence produced at the hearing[?]

B. Did the [Orphans' Court] commit an[] error of law and/or abuse its discretion when it terminated [Mother's] parental rights pursuant to 23 Pa.C.S.A. [section] 2511(b) on the basis that the developmental, physical, emotional needs and welfare of [Child] was best served by termination of [M]other's rights where she had made, and was making, substantial progress on the Family Services Plan(s)[?]

_____

12/2/25, at 70. She did however testify with respect to the permanency review portion of the hearing which the Orphans' Court heard first.

C.  Did the [Orphans' Court] commit an[] error of law and/or abuse its discretion when it terminated [Mother's] rights when family findings were not completed pursuant to 67 Pa.C.S.A. section 7503 and which affected necessary services being provided to Mother pursuant to 42 Pa.C.S.A. section 6351[?]

Mother's Brief at 6-7.[4]

Before reaching the merits of Mother's appeal, we first address whether the Orphans' Court's appointment of Attorney Martin comported with 23 Pa.C.S.A. § 2313(a).  *See In re Adoption of K.M.G.*, 240 A.3d 1218, 1235-36 (Pa. 2020) (holding that "appellate courts should engage in *sua sponte* review to determine if orphans' courts have appointed counsel to represent the legal interests of children in contested termination proceedings, in compliance with [23 Pa.C.S.A. § 2313(a)," and, further, if the Orphans' Court appoints one attorney to represent both the child's best interests and legal interests, "appellate courts should review *sua sponte* whether the orphans' court made a determination that those interests did not conflict" prior to appointment).

In defining "child" the representation provision of the Adoption Act provides the following guidance:

> **(a) Child. —** The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian *ad litem* to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part

_____

[4] OCY and MCAP, on behalf of Child, each filed briefs in this Court in support of the decree involuntarily terminating Mother's parental rights.

whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S.A. § 2313(a) (italics added). "[A] child's legal interests . . . are synonymous with the child's preferred outcome," whereas a child's best interests encompass what is "best for child's care, protection, safety, and wholesome physical and mental development, regardless of whether the child agrees." *Matter of Adoption of A.C.M.*, 333 A.3d 704, 708 (Pa. Super. 2025) (citations omitted). In order to "ensure that the child's legal interests are presented to the [trial] court," this Court has explained that "*a single attorney cannot represent a child's best interests and legal interests if those interests conflict*." *K.M.G.*, 240 A.3d at 1234, 1236 (emphasis added).

Accordingly,

[t]o fulfill its statutory duty under Section 23 Pa.C.S.A. 2313, the Orphans' Court:

must determine whether counsel can represent the dual interests **before** appointing an individual to serve as GAL/Counsel for a child. Given the essential nature of the GAL/Counsel's ability to represent a child without conflict and **this Court's mandate that the orphans' court make that determination prior to appointment**, we conclude that appellate courts should verify that the orphans' court indicated that the attorney could represent the child's best interests and legal interests without conflict.

*K.M.G.*, 240 A.3d at 1236 (emphases added). An Orphans' Courts' failure to appoint a separate attorney to represent the child's legal interests "constitutes structural error, meaning it is not subject to a harmless-error analysis." *Id*.

- 7 -

***A.C.M.***, 333 A.3d at 708.

This Court held an appointment order which "delegated to counsel ***the Orphans' Court's responsibility*** to determine whether a conflict in dual representation existed" violates ***K.M.G.*** ***Id***. at 708 (citation and footnote omitted).[5] We thus vacated the termination decrees and remanded for the court to follow the mandate of section 2313(a). ***Id.*** at 709.

Subsequently, in ***Interest of N.M.D.***, 2026 WL 92201 at *4 (Pa. Super. filed January 13, 2026) (unpublished memorandum),[6] this Court again concluded an Orphans' Court failed to make an independent conflict determination, prior to appointment, inasmuch as it "accepted [the GAL's] statement that there was no conflict" and allowed the GAL to serve in a dual role. Because the court did not follow the mandate of section 2313(a), we vacated and remanded the court's termination order. ***Id***. at *4. We explained, "The record . . . does not reflect that the [Orphans' Court] itself made a determination that there was no conflict between [the child's] best interests and legal interests before appointing [the GAL as the child's] legal

_____

[5] The order in ***A.C.M.*** "assigned the GAL the responsibility of identifying any conflict of interest in the joint representation," and placed on the GAL the obligation to move for the appointment of a separate counsel if it became aware of a conflict. ***Id***. at 708.

[6] Pursuant to Pa.R.A.P. 126(b)(2), non-precedential decisions may be cited for their persuasive value.

counsel. Rather, the record reflects that the [Orphans' Court] delegated this responsibility to [the GAL]." *Id*.

Instantly, the Orphans' Court failed to make the requisite conflict determination prior to the appointment of Attorney Martin as legal counsel. *See A.C.M.*, 333 A.3d at 708 (citing *K.M.G.*, 240 A.3d at 1236). The appointment order was silent as to any conflict determination. *See* Order, 7/15/25. Furthermore, as in *A.C.M.* and *N.M.D.*, the Orphans' Court improperly delegated its responsibility pursuant to section 2313(a). *See A.C.M.*, 333 A.3d at 708; *N.M.D.*, 2026 WL 92201 at *4. At the commencement of the evidentiary hearing, subsequent to appointment, the Orphans' Court simply relied on Attorney Martin's representation there was no conflict between Child's best interests and legal interests. *See* N.T., 12/2/25, at 7-8 ("[Attorney Martin] articulated that no conflict exists between representing [Child's] legal interest and best interest.").

Child was more than three and one-half years old at the time of the subject hearing. Although the record reflects Child's involvement in speech therapy, it also evinces that, by the time of the hearing, he talks "a lot." N.T., 12/2/25, at 105. We, therefore, decline to apply the presumption of *In re T.S.*, 192 A.3d 1080, 1092 (Pa. 2018), there is no conflict between a child's best interest and legal interest where a child is "very young and preverbal." Accordingly, we are constrained to vacate the Orphans' Court's decree and remand for the Orphans' Court to fulfill its section 2313(a) duty.

We direct the Prothonotary of this Court to immediately remit the record to the Orphans' Court. Upon remittal of the record on remand, consistent with section 2313(a), *K.M.G.*, and *A.C.M.*, the Orphans' Court shall, within thirty days, hold a hearing and make an independent determination as to whether there is a conflict between Child's best interests and legal interests that would prevent Attorney Martin from representing both interests. *See K.M.G.*, 240 A.3d at 1234-36; *A.C.M.*, 333 A.3d at 709. If the Orphans' Court determines that no conflict exists between the Child's best interests and legal interests, then it shall re-enter its decree terminating Mother's parental rights, which will constitute a final, appealable order. *See A.C.M.*, 333 A.3d at 709 (citing *In re A.J.R.O.*, 270 A.3d 563, 570 (Pa. Super. 2022)). If the Orphans' Court determines that there is a conflict between Child's best interests and legal interests, then the Orphans' Court shall appoint separate legal counsel for Child and conduct a new termination hearing. *See id.*; *see also K.M.G.*, 240 A.3d at 1235.

Termination decree vacated. Remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/1/2026

- 10 -